**STATE of Missouri, Respondent,**

v.

**Michael Andrew TISIUS, Appellant.**

No. SC 91209.

Supreme Court of Missouri,
En Banc.

March 6, 2012.

Rehearing Denied May 1, 2012.

402 ■ 

Jeannie Willibey, Public Defender's Office, Kansas City, for Tisius.

Richard Starnes, Attorney General's Office, Jefferson City, for State.

GEORGE W. DRAPER, III, Judge.

### Introduction and Procedural History

Michael A. Tisius (hereinafter, "Tisius") was convicted of two counts of first-degree murder, section 565.020, RSMo 2000,[1] for killing Jason Acton (hereinafter, "Officer Acton") and Leon Egley (hereinafter, "Officer Egley"). This Court affirmed Tisius' convictions and sentence. *State v. Tisius,* 92 S.W.3d 751 (Mo. banc 2002) ("*Tisius I* "). Tisius filed a motion for post-conviction relief pursuant to Rule 29.15; the circuit court affirmed the convictions but set aside the sentences, ordering a new sentencing trial. This Court affirmed the circuit court's denial of post-conviction claims related to the guilt phase. *Tisius v. State,* 183 S.W.3d 207 (Mo. banc 2006) ("*Tisius II* ").

At the penalty phase retrial, Tisius again was sentenced to death. Tisius brings this appeal, raising seven issues. This Court has exclusive jurisdiction pursuant to Mo. Const. art. V, sec. 3. The judgment is affirmed.

### Point One: Allegations in the Complaint were Hearsay and Irrelevant

Tisius argues the circuit court abused its discretion in overruling his objection to the admission of State's Exhibit 53, the certified court record of the complaint of Tisius' conviction for possession of a prohibited item in the department of corrections. Tisius asserts the complaint was not admissi-

---

1. All statutory references herein are to RSMo 2000.

ble pursuant to section 565.030 because: (1) the complaint was inadmissible hearsay; (2) he was denied his right to confront and cross-examine the person who determined the prohibited item to be a "boot shank"; and (3) the complaint was not relevant as it failed to prove specific conduct that he committed. Tisius believes that without this evidence, the jury would have sentenced him to life without parole.

Near the end of trial, the State informed the court it intended to offer the certified copy of Tisius' conviction of possessing a prohibited item in the department of corrections. The State sought to read the docket entry showing Tisius entered an *Alford* plea [2], the complaint to establish the basis of the crime, and his sentence. Tisius objected to the portion of the complaint stating he "knowingly possessed a metal object known as a boot shank, a weapon or item [of] personal property that could be used in such manner" as hearsay. The circuit court permitted the State to read the complaint up to the point that it said Tisius was charged with knowingly possessing a metal object "commonly known as a boot shank."

### Standard of Review

▋ Generally, the circuit court is vested with broad discretion to admit or exclude evidence. *State v. Bowman*, 337 S.W.3d 679, 686 (Mo. banc 2011). "Reversal is warranted only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* The standard of review for publishing evidence to the jury also is an abuse of discretion. *State v. Taylor*, 298 S.W.3d 482, 491 (Mo. banc 2009). However, Tisius only preserved his challenge to the admission of the complaint for hearsay.

▋ Tisius failed to object to the admission of the complaint on the grounds that it violated his confrontation rights or that it was irrelevant. "To properly preserve an issue for an appeal, a timely objection must be made during trial." *State v. Cooper*, 336 S.W.3d 212, 214 (Mo. App. E.D.2011) (citing *State v. Mayes*, 63 S.W.3d 615, 628 (Mo. banc 2001)). The objection at trial must be specific, and on appeal, the same grounds must be relied upon. *State v. Rasheed*, 340 S.W.3d 280, 287 (Mo.App. E.D.2011); *State v. Moore*, 303 S.W.3d 515, 522–23 (Mo. banc 2010). To preserve constitutional claims or errors for appellate review, they must be raised at the first opportunity with citations to specific constitutional sections. *State v. Minner*, 311 S.W.3d 313, 319 (Mo.App. W.D.2010) (citing *State v. Chambers*, 891 S.W.2d 93, 103–04 (Mo. banc 1994)). On appeal, a defendant may not broaden the objection presented to the circuit court. *Minner*, 311 S.W.3d at 319. Accordingly, Tisius' challenge to the admission of the complaint on the grounds that it violated his confrontation rights and was irrelevant only can be reviewed for plain error. Rule 30.20. "Plain error is found when the alleged error 'facially establish[es] substantial grounds for believing a manifest injustice or miscarriage of justice occurred.'" *State v. Dorsey*, 318 S.W.3d 648, 652 (Mo. banc 2010) (quoting *State v. Salter*, 250 S.W.3d 705, 713 (Mo. banc 2008)).

### Analysis

#### (1) Hearsay

▋ "A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends upon the veracity of the statement for its value." *State v. Winfrey*, 337 S.W.3d 1, 6 (Mo. banc 2011) (quoting

**2.** *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

*State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997)). A hearsay statement is inadmissible unless it is a recognized hearsay exception. *Id., Taylor*, 298 S.W.3d at 492.

In this case, the complaint was admissible as a recognized hearsay exception as a certified record of a judicial proceeding. Section 490.130 provides that certified records of the courts shall be received "as evidence of the acts or proceedings of such court in any court of this state." The circuit court did not abuse its discretion in admitting the certified record of a prior judicial proceeding as an exception to the hearsay rule.

### (2) Confrontation Clause

■ The Sixth Amendment Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the United States Supreme Court held that the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). It is the testimonial nature of a statement that makes a declarant a "witness" that the defendant has the right to confront. *Id.* at 51, 124 S.Ct. 1354.

■ When the primary purpose of a statement is to establish or prove past events that could be potentially relevant to later criminal prosecution, it may be considered testimonial. *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *see also Zink v. State*, 278 S.W.3d 170, 189–90 (Mo. banc 2009). While the complaint was prepared to instigate litigation, it was not created to pre-serve evidence. *Cf. State v. Davidson*, 242 S.W.3d 409, 417 (Mo.App. E.D.2007) (finding the preparation of an autopsy report qualified as a "testimonial statement"), and *State v. March*, 216 S.W.3d 663, 667 (Mo. banc 2007) (finding a laboratory report created for the purpose of prosecution is testimonial in nature). *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005). If Tisius wanted to confront the evidence against him in the complaint, he would have needed to not plead guilty to the charge. Accordingly, there was no manifest injustice by the circuit court's admission of State's Exhibit 53.

### (3) Relevance

■ Tisius asserts the complaint was irrelevant and did not prove his actual conduct underlying the criminal conviction for possession of the prohibited article. Tisius reasons its admission was prejudicial, citing *State v. Fassero*, 256 S.W.3d 109 (Mo. banc 2008).

■ "In a death penalty trial, the defendant's character and prior record are central issues of the penalty phase." *State v. Williams*, 97 S.W.3d 462, 470 (Mo. banc 2003). Both the State and the defense may introduce any evidence relating to the defendant's character, including details of prior convictions and subsequent conduct to the crime being adjudicated. *Bowman*, 337 S.W.3d at 691.

In *Fassero*, the State introduced the defendant's Illinois indictment, but it never introduced any evidence demonstrating the defendant committed the criminal sexual abuse acts described in the indictment. *Fassero*, 256 S.W.3d at 119. This Court found that the indictment was relevant "only to prove that [the defendant] had been charged with a crime, not that [the defendant] had actually engaged in any criminal conduct." *Id.* The indictment was

inadmissible because it was not authorized "history and character" evidence. *Id.;* section 557.036.3. The highly inflammatory nature of the sexual abuse charges, the similarity to his charged crime, and the lengthy sentence imposed by the jury indicated the admission of the indictment resulted in a high risk of prejudice. *Id.* Accordingly, Fassero's sentence was vacated, and the case was remanded for a new penalty phase hearing. *Id.*

While Fassero had not been convicted of the crimes set forth in the Illinois indictment, Tisius pleaded guilty to the complaint that the State admitted. The circuit court did not plainly err in admitting Tisius' prior conviction into evidence as this was relevant to his character. *Middleton v. State,* 80 S.W.3d 799, 811 (Mo. banc 2002); *State v. Cole,* 71 S.W.3d 163, 175 (Mo. banc 2002).

### Point Two: Improper Cross–Examination of Defense Expert

Tisius asserts the circuit court abused its discretion and plainly erred in overruling his objections to the State's cross-examination of his expert, Dr. Shirley Taylor (hereinafter, "Dr. Taylor"). Tisius believes the State referred to irrelevant and prejudicial information and did not lay a foundation for his questions by: (1) questioning Dr. Taylor about facts in a book by David Pelzer without demonstrating it was an authoritative scientific text; (2) questioning Dr. Taylor about the Rosenhan study (hereinafter, "the study") without demonstrating it was an authoritative scientific text; and (3) telling the jury that Tisius did not plead guilty.

 Tisius failed to object to the State's questions regarding the foundation of either the book or the study.

It is particularly important that where an inadequate foundation has been laid for admission of evidence that the objection made be specific as such foundation deficiencies can frequently be remedied. We will not review the contention of inadequate foundation raised for the first time on appeal.

*State v. Butler,* 24 S.W.3d 21, 25–26 (Mo. App. W.D.2000) (quoting *State v. Blue,* 875 S.W.2d 632, 633 (Mo.App. E.D.1994)). Hence, plain error review is not afforded to Tisius' challenges to the foundation of the book or the study.

 Tisius preserved the issue regarding cross-examination of Dr. Taylor regarding the relevance of the book for appeal. A circuit court's decision allowing evidence for the purpose of cross-examination is reviewed for an abuse of discretion. *Tyson v. State,* 249 S.W.3d 849, 854 (Mo. banc 2008). An abuse of discretion occurs when the circuit court's ruling is "clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Winfrey,* 337 S.W.3d at 5 (quoting *State v. Gonzales,* 153 S.W.3d 311, 312 (Mo. banc 2005)). This Court reviews the circuit court's decision "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* (quoting *State v. Middleton,* 995 S.W.2d 443, 452 (Mo. banc 1999)).

 Evidence must be relevant to be admissible. *State v. Davis,* 318 S.W.3d 618, 639 (Mo. banc 2010). Relevancy has two tiers. *Id.* "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *State v. Anderson,* 306 S.W.3d 529, 538 (Mo. banc 2010). Logically relevant evidence is admissible only if it is also legally relevant. *Id.* "Legal relevance weighs the probative value of the evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay,

waste of time, or cumulativeness." *Id.* If the prejudice of the logically relevant evidence outweighs its probative value, it should be excluded. *Id.*

■ In this case, the evidence was admissible. In questioning a defendant's expert, the State is afforded wide latitude in "the cross-examination of witnesses to test qualifications, credibility, skill or knowledge, and the value and accuracy of the expert's opinion." *State v. Zink,* 181 S.W.3d 66, 72 (Mo. banc 2005) (quoting *Middleton v. State,* 103 S.W.3d 726, 741 (Mo. banc 2003)). Dr. Taylor, Tisius' expert, testified that she was familiar with the book and its author, a man who suffered a similarly horrible childhood, but who overcame his background to become a productive member of society. These questions were logically relevant to refute Dr. Taylor's assertions that Tisius' poor childhood necessarily led him to suffer some mental illnesses and to commit murder to earn the approval of another. Additionally, it was not unduly prejudicial. It merely demonstrated that a poor childhood does not necessarily result in mental illness and a willingness to commit murder.

■ Tisius next argues the circuit court plainly erred in allowing the State to cross-examine Dr. Taylor regarding the study because it was not relevant to the case at bar. The State cross-examined Dr. Taylor regarding her familiarity with the study. Dr. Taylor was not immediately familiar with the study until the State explained its premise—a number of "normal" patients visited various doctors and each patient received incorrect psychological diagnoses. At that point, Dr. Taylor stated she was familiar with the study, but did not know its name. Further, Dr. Taylor testified she was familiar with "a number of studies like that," and she concluded that those studies demonstrate "that we can all be fooled." Tisius believes this line

of questioning misled the jury. Since this claim was not included in the motion for new trial, Tisius requests plain error review under the manifest injustice standard of Rule 30.20.

The State's cross-examination of Dr. Taylor was relevant and admissible. Dr. Taylor admitted the accuracy of a diagnosis is dependant upon truthful self-reporting by a patient as recognized by the study. Here, the issue of Tisius' accuracy in his self-reporting to Dr. Taylor was contested. The State sought to challenge Dr. Taylor's diagnosis of Tisius because Dr. Taylor admitted there was some error rate in her profession based upon the need for a patient to self-report truthfully for an accurate diagnosis. Accordingly, the State argued that Tisius attempted to mislead Dr. Taylor in her diagnosis. The circuit court did not plainly err.

■ Finally, Tisius claims that informing the jury that he did not plead guilty was misleading, especially in light of the other evidence and argument presented by the State that he was not remorseful. Tisius asserts on appeal that he wanted to plead guilty but the State would not make any offer less than death. Since this claim was not included in the motion for new trial, Tisius requests plain error review under the manifest injustice standard of Rule 30.20.

On direct examination by Tisius' counsel, Dr. Taylor testified about how she believed he was sorrowful for his actions, how he wanted to apologize to the families for his actions, and how she thought he demonstrated expressions of remorse. On cross-examination, the State queried into the issue of whether Tisius had a motivation to lie to her, to avoid a potential death sentence. Dr. Taylor believed Tisius' remorsefulness indicated he did not care if he were found guilty nor did he have a

motivation to lie because "[h]e knew he was guilty of murder." The State then questioned the extent of his remorse, stating "But did he plead guilty? No. Right? He didn't plead guilty." Dr. Taylor never answered this question.

■ "When a party inquires into part of an act, occurrence, or transaction they have 'opened the door' to testimony regarding that act, occurrence, or transaction, and the opposing party is entitled to inquire into other parts of it in order to rebut possible inferences that may be drawn from an incomplete version presented by the adversary or to prove the party's own version of events." *State v. Newsom*, 299 S.W.3d 784, 789 (Mo.App. S.D.2009). Here, Tisius sought testimony from Dr. Taylor demonstrating his remorse and sorrow for murdering two peace officers. The State's cross-examination of Dr. Taylor was an attempt to discredit the veracity of Tisius' feelings as he related them to Dr. Taylor.

Further, had this Court not reversed and remanded the penalty phase of Tisius' trial, this jury would have sat during the guilt and sentencing portions of his trial. Accordingly, the jury would have known Tisius did not plead guilty as it would have determined his guilt or innocence. The circuit court did not plainly err in allowing this cross-examination.

### Point Three: Improper Closing Arguments

Tisius claims the circuit court plainly erred by failing to intercede *sua sponte* at multiple times during the State's closing argument. Tisius suggests several of the State's comments were improper and resulted in manifest injustice.

■ Tisius acknowledges his trial counsel did not object to the State's statements during closing argument, and thus,

plain error is the review standard. Rule 30.20. It is particularly difficult to obtain relief based on an assertion of plain error concerning closing argument because the failure to object during closing argument is more likely a function of trial strategy than of error. *Anderson*, 306 S.W.3d at 543. "Plain error relief seldom is granted on assertions of error relating to closing arguments because absence of an objection and request for relief during closing arguments mean that any intervention by the circuit court would have been uninvited and may have caused increased error." *State v. Perry*, 275 S.W.3d 237, 245 (Mo. banc 2009). Therefore, to be entitled to relief under plain error review, Tisius must establish that the improper argument had a decisive effect on the "outcome of the trial and amounts to manifest injustice." *Anderson*, 306 S.W.3d at 543. Tisius bears the burden to prove the decisive effect. *Id.*

#### (1) Right to mercy

■ Tisius claims the State's commentary that he did not have a right to ask for mercy misstated the law. "Closing arguments must be examined in the context of the entire record." *Anderson*, 306 S.W.3d at 543. Tisius challenges the following portion of the State's argument:

Ladies and gentlemen, you can—and I told you during voir dire a couple of days ago, you can extend mercy for whatever reason to this man. You can do that. But the one thing he does not have the right to do is to ask for it. He forfeited that right on June 22nd when he committed these two murders.

■ "Prosecutors may discuss the concept of mercy in their closing arguments because mercy is a valid sentencing consideration, and in that connection may argue that the defendant should not be granted mercy." *State v. Forrest*, 183

S.W.3d 218, 228 (Mo. banc 2006) (quoting *State v. Deck,* 994 S.W.2d 527, 543 (Mo. banc 1999)). The State may not argue that the jury is prohibited from lawfully granting a defendant mercy by imposing a life sentence. *Deck,* 994 S.W.2d at 543. Looking at the closing argument in context, the State did not inform the jury that it could not extend mercy to Tisius. Rather, the State's argument attempts to sway the jury that it should reject Tisius' plea for mercy because he did not extend that same consideration to his victims. The circuit court did not plainly err in failing to intervene *sua sponte* during the State's closing argument with respect to this comment.

### (2) Future dangerousness

■ Tisius alleges the State made an improper argument regarding his future dangerousness in the following three statements:

> [W]e all have an obligation to protect jailers ..., those staff members, those doctors, those nurses.

> I'm asking you on behalf of the entire law enforcement community, I'm asking you to protect us, protect them from people like [Tisius].

> [M]aybe [Tisius] will die in prison. I think our goal is to make sure he's the only one that does and that no other guard, no other nurse, no other person that works there with him, no other inmate that's in that facility is going to be vulnerable to the same type of decisionmaking that these two officers suffered from.

Tisius asserts these arguments were improper because they suggested the jury had an obligation to impose the death penalty to protect prison employees, guards, and inmates from future harm.

■ Just as in *State v. Deck,* 303 S.W.3d 527, 543 (Mo. banc 2010), Tisius relies upon *Schoels v. State,* 114 Nev. 981, 966 P.2d 735 (1998), and *Blake v. State,* 121 Nev. 779, 121 P.3d 567 (2005), claiming this argument impermissibly asked the jury to impose the death penalty in order to protect future innocent victims from being killed by him. Yet one purpose of capital punishment is incapacity of dangerous criminals and "the consequent prevention of crimes that they may otherwise commit in the future." *Deck,* 303 S.W.3d at 543 (quoting *State v. Bolder,* 635 S.W.2d 673, 683 (Mo. banc 1982)). Further, the United States Supreme Court "has approved the jury's consideration of future dangerousness during the penalty phase of a capital trial, recognizing that a defendant's future dangerousness bears on all sentencing determinations made in our criminal justice system." *Simmons v. South Carolina,* 512 U.S. 154, 162, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).

Here, the State's argument included Tisius' potential future dangerousness to the community, but it did not "suggest or imply the jurors would be directly responsible or held accountable if [Tisius] harmed anyone else in the future." *Deck,* 303 S.W.3d at 544. The circuit court did not plainly err in failing to intervene *sua sponte* during the State's closing argument with respect to these comments.

### (3) Justice for the families

■ Tisius challenges two statements that he claims implies the victims' families wanted him sentenced to death. First, during closing argument, the State mentioned that one victim was engaged to be married to a woman with four children. The State commented:

> And you know, it's pretty audacious to come in here now, as [Tisius] is doing, and saying, "I didn't have a dad and, boy, look[ ] what happened. Do those Miller kids-do those Miller kids get to

go kill somebody because their dad, their father figure is gone? If so, [Tisius] write down the name. Tell me who they get to kill, because I bet your name would be on that piece of paper.

■ Looking at the closing argument in context, the State was not commenting upon the victim's future stepchildren's desire for Tisius to be executed, but a sarcastic response to his belief he was less responsible for his actions because he was rejected by his father. The State is free to "comment on the evidence and the credibility of the defendant's case. . . . Counsel may even belittle and point to the improbability and untruthfulness of specific evidence." *State v. Storey*, 40 S.W.3d 898, 910 (Mo. banc 2001) (quoting *State v. Hall*, 982 S.W.2d 675, 683 (Mo. banc 1998)). The State did not argue that the jury should disregard any of the evidence. Rather, it was challenging Tisius' mitigating evidence.

■ Second, Tisius challenges the State's statement that the death penalty "is an answer to the plea from the families of [the victims] and Randolph County that you do justice in this case." Tisius claims that this was inadmissible as family members' characterizations and opinions about the appropriate sentence and that the circuit court plainly erred in failing to discontinue the State's closing argument *sua sponte*.

■ "[I]t is proper for a prosecutor to seek and request the most severe penalty." *State v. Clayton*, 995 S.W.2d 468, 480–81 (Mo. banc 1999). This Court has determined that stronger statements than the one made here were not plain error in closing argument. *See, e.g., State v. Ringo*, 30 S.W.3d 811, 821 (Mo. banc 2000) (finding circuit court did not abuse its discretion in allowing closing argument that the defendant would receive a reward by not having the death penalty imposed and

the State operated within its wide latitude to suggest the defendant's culpability was not diluted by his troubled childhood); *State v. Strong*, 142 S.W.3d 702, 727–28 (Mo. banc 2004) (finding there was no plain error from the State's argument that the defendant would escape justice if sentenced to life without parole).

Tisius provides nothing other than speculation that the exclusion of these statements would have changed the outcome of his sentencing. Therefore, the Court does not believe the State's closing argument amounted to a manifest injustice; the circuit court did not plainly err in failing to intervene *sua sponte* during the State's closing argument with respect to these comments.

### Point Four: Required Step in Sentencing Verdict Directors Omitted

■ Tisius asserts the circuit court plainly erred in submitting instructions 11 and 17, the verdict mechanics instructions, because the instructions omitted language concerning the mitigating evidence. Tisius believes the instructions prevented the jury from returning a sentence of life if it believed the mitigating circumstances outweighed the aggravating circumstances.

■ "For instructional error to constitute plain error, the defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict." *State v. Celis–Garcia*, 344 S.W.3d 150, 154 (Mo. banc 2011) (internal citations omitted). "If a defect is not readily apparent to alert counsel preparing to argue the case, there is very little likelihood that the jury will be confused or misled." *State v. Green*, 812 S.W.2d 779, 787 (Mo.App. W.D.1991) (quoting *Hudson v. Carr*, 668 S.W.2d 68, 72 (Mo. banc 1984)).

This Court has resolved this issue previously. *Anderson,* 306 S.W.3d at 534–36; *Storey,* 40 S.W.3d at 919–14; *Cole,* 71 S.W.3d at 176. Tisius merely asks this Court to revisit its prior opinions and overturn those holdings. This Court declines to do so. The circuit court did not plainly err.

### Point Five: Instructions Failed to State Proper Burden of Proof

■■■■■ Tisius argues the circuit court erred in submitting instructions 9 and 15, based upon MAI–CR3d 313.44A, the mitigating circumstances instructions. Tisius claims these instructions unconstitutionally shifted the burden of proof from the State to the defense. This Court will reverse the circuit court's decision to submit an instruction only if the instructional error misled the jury and is so prejudicial that it deprives the defendant of a fair trial. *State v. Nash,* 339 S.W.3d 500, 511–12 (Mo. banc 2011). MAI instructions are presumed to be valid and, when applicable, must be given. *State v. Johnson,* 284 S.W.3d 561, 572 (Mo. banc 2009); Rule 28.02(c).

Tisius' allegations that the instructions improperly shifted the burden of proof have been rejected by the United States Supreme Court and this Court. The United States Supreme Court stated:

> So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency.

*Kansas v. Marsh,* 548 U.S. 163, 170–71, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006) (quoting *Walton v. Arizona,* 497 U.S. 639, 650, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (*overruled on other grounds by Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)).

This Court has rejected this argument in *Davis,* 318 S.W.3d at 643; *Johnson,* 284 S.W.3d at 587–89; *Zink,* 181 S.W.3d at 74; and *State v. Taylor,* 134 S.W.3d 21, 30 (Mo. banc 2004). The circuit court did not err.

### Point Six: *Apprendi* Violation

■■ Tisius asserts the circuit court erred in sentencing him to death because the information did not charge him with aggravated first-degree murder and failed to plead any aggravating circumstances. These assertions are based upon the premise that the aggravating circumstances were additional elements of first-degree murder punishable by death, and therefore, the State violated *Apprendi v. New Jersey,* 530 U.S. 466, 484, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

■■ Tisius unsuccessfully raised this identical issue in his first appeal. *See Tisius I,* 92 S.W.3d at 766. Since this claim was raised and rejected in *Tisius I,* the law of the case doctrine applies. *Deck,* 303 S.W.3d at 545. The law of the case doctrine governs successive appeals and states that the same issues may not be relitigated in a subsequent appeal. *State v. Johnson,* 244 S.W.3d 144, 163 (Mo. banc 2008); *Laws v. State,* 183 S.W.3d 629, 633 (Mo.App. S.D.2006). The previous holding on those issues becomes the law of the case. Tisius previously raised this argument, and he many not raise it again in this appeal.

■■ Additionally, this argument has been rejected by this Court in multiple cases. The notice of aggravated circumstances under section 565.005.1 is sufficient to notify a defendant that he or she is

charged with a capital offense. *See Davis*, 318 S.W.3d at 642; *Johnson*, 284 S.W.3d at 589; *State v. Johnson*, 207 S.W.3d 24, 48 (Mo. banc 2006); *State v. Gill*, 167 S.W.3d 184, 194 (Mo. banc 2005); *Strong*, 142 S.W.3d at 711–12; and *State v. Glass*, 136 S.W.3d 496, 513 (Mo. banc 2004). The circuit court did not err in declining to quash the information.

### Point Seven: Proportionality Review

Tisius invokes this Court's independent duty to review his death sentence under section 565.035. Tisius believes this Court should reduce his sentence to life imprisonment without parole based upon the substantial evidence in mitigation, the nature of his crimes, and similar cases in which death was not imposed.

This Court is obliged to conduct an independent review of all death penalty cases for proportionality pursuant to section 565.035. Section 565.035.3 requires this Court to determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant.

#### (1) Passion and prejudice

Tisius argues that the allegations of trial error set forth in Points I, II, and III of his appeal establish that his death sentence was the result of passion, prejudice, and other arbitrary factors. However, as previously discussed, Tisius' allegations of

trial error are without merit. Accordingly, he cannot establish these alleged errors resulted in a sentence of death imposed under the influence of passion, prejudice, or any other arbitrary factor.

#### (2) Aggravating circumstances

Tisius does not address the second step in the proportionality review. The jury, however, found aggravating circumstances.

With respect to Officer Acton's murder, the jury found two aggravating circumstances. First, the jury found that the murder of Officer Acton was committed while Tisius was engaged in the commission of another unlawful homicide of Officer Egley. Second, the jury found Tisius committed a murder against Officer Acton, who was a peace officer engaged in the performance of his duty.

With respect to Officer Egley's murder, the jury found three aggravating circumstances. First, the jury found that the murder of Officer Egley was committed while Tisius was engaged in the commission of another unlawful homicide of Officer Acton. Second, the jury found Tisius committed a murder against Officer Egley, who was a peace officer engaged in the performance of his duty. Third, the jury found the murder of Officer Egley involved depravity of mind and as a result thereof, the murder was outrageously and wantonly vile, horrible, and inhuman.

The evidence supported each of the aggravating circumstances found by the jury. There is no dispute that Officer Acton and Officer Egley were acting as peace officers. The evidence supports the jury's finding that the murder of Officer Egley, the second victim, was committed while Tisius was engaged in the murder of Officer Acton. Further, the evidence supports the jury's finding that the murder of Officer Egley was wantonly vile, horrible,

and inhuman. Tisius shot Officer Egley at close range at two different times; during the second incident, he was fully conscious and aware he and Officer Acton had been shot.

#### (3) Similar cases

■ In *Deck*, 303 S.W.3d at 527, 555–63 (J. Stith concurring), and *Anderson*, 306 S.W.3d at 544 (J. Breckenridge concurring), a majority of this Court held that the proportionality review mandated by section 565.035.3 requires consideration of all factually similar cases in which the death penalty was submitted to the jury, including those resulting in a sentence of life imprisonment without the possibility of probation or parole. The concurring opinions in *Deck* and *Anderson* state the applicable law with respect to proportionality review. This Court retains its customary inquiry in applying this approach by continuing "doing what it now does in regard to cases in which death was imposed— review them to determine whether the sentence of death is disproportionate in light of the crime, the defendant and the strength of the evidence ... but ... include[s] similar cases in which a life sentence was imposed in that analysis." *Davis*, 318 S.W.3d at 643–44 (quoting *Deck*, 303 S.W.3d at 560).

■ This Court affirmed sentences of death when there was more than one victim murdered. *See Dorsey*, 318 S.W.3d at 659; *Anderson*, 306 S.W.3d at 547; *Deck*, 303 S.W.3d at 553–63; *Strong*, 142 S.W.3d at 728; *Taylor*, 298 S.W.3d at 513; *State v. Christeson*, 50 S.W.3d 251, 273 (Mo. banc 2001); *State v. Smith*, 32 S.W.3d 532, 559 (Mo. banc 2000); and *Ringo*, 30 S.W.3d at 826–27. This Court affirmed death sentences when a law enforcement officer was murdered. *See Johnson*, 284 S.W.3d at 577; *Clayton*, 995 S.W.2d at 484; *State v. Johnson*, 968 S.W.2d 123, 135 (Mo. banc

1998) (multiple law enforcement officers murdered); *State v. Sweet*, 796 S.W.2d 607, 617 (Mo. banc 1990); *State v. Mallett*, 732 S.W.2d 527, 542–43 (Mo. banc 1987). Further, this Court affirmed death sentences when an injured and helpless victim is subject to a fatal blow. *See Johnson*, 284 S.W.3d at 577; *Cole*, 71 S.W.3d at 177; *State v. Johns*, 34 S.W.3d 93, 118 (Mo. banc 2000); and *Middleton*, 995 S.W.2d at 467. Tisius' death sentence is not disproportionate given the resolution of these similar death penalty cases.

Tisius identifies *State v. McIlvoy*, 629 S.W.2d 333 (Mo. banc 1982), as a similar case in which this Court found McIlvoy's death sentence to be excessive and disproportionate to the penalty imposed in similar cases. The Court noted McIlvoy had a low IQ, a ninth-grade education, and at the time of the murder, he was under the influence of large amounts of alcohol and drugs, further diminishing his intellectual capacity. *Id.* at 341. McIlvoy also turned himself in, confessed to his crimes, and waited for police officers to pick him up. *Id.* at 341–42.

Tisius believes the similarities between himself and McIlvoy warrant this Court's reversal of his death sentence. This comparison is without merit. Tisius had an eighth-grade education and confessed to his crimes. Tisius also presented mitigation evidence that, if believed by the jury, demonstrated he had some mental illness issues. However, unlike McIlvoy, Tisius possesses an average-to-above-average IQ. There was no evidence Tisius was intoxicated at the time of the murders. Tisius fled the scene of the crime.

This Court independently researched both death and life cases and has not identified any similar case involving premeditated murders of two law enforcement officers as committed by Tisius that would support a finding that his sentence is dis-

proportionate. Tisius' conduct was calculating and brazen. Tisius entered the county jail, attempting to release an inmate. He shot Officer Acton at close range, killing him instantly. Tisius then shot Officer Egley at close range until he fell to the ground. After unsuccessfully attempting to release the inmate, he again shot Officer Egley while the officer was lying on the floor. Officer Egley was found later gasping for air, lying in a pool of his own blood before he died.

The imposition of the death penalty meets the statutory requirements. There was no error.

### Conclusion

For the foregoing reasons, the judgment is affirmed.

All concur.