

# Missouri Court of Appeals
## Southern District

### In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | No. SD38483 |
| v. | ) | |
| | ) | **Filed:  June 13, 2025** |
| JOHN VINCENT ESTES, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Dean Dankelson, Judge

## VACATED AND REMANDED WITH INSTRUCTIONS

A jury in Jasper County found John Vincent Estes guilty of one count of statutory rape. The trial court sentenced him to forty years imprisonment.  Estes appeals his conviction, asserting two claims of trial court error.  First, Estes asserts that the trial court erred in allowing the State to present testimony of a propensity witness.  Second, he asserts that the trial court erred in excluding, pursuant to the rape shield statute, specific evidence of the victim's ("Victim") prior sexual conduct.  Finding merit in Estes' second claim of error, we vacate his conviction and remand for a new trial consistent with this opinion.

### Factual Background

Estes does not challenge the sufficiency of the evidence to support his conviction.  Thus, we summarize only the facts relevant to his points on appeal.  As required, we view the evidence

in the light most favorable to the verdicts. *State v. Vandergrift*, 669 S.W.3d 282, 291 (Mo. banc 2023).

Victim testified that Estes raped her in the garage of Estes' home on November 23, 2021. Victim, thirteen years old on the date in question, was an overnight guest of Estes' adopted daughter ("Daughter"). Victim testified that she and Daughter slept on mattresses on the living room floor. Victim testified Estes lied down with Victim and Daughter on the mattresses, and he gave them "massages." Victim testified that Estes went to his bedroom, and Victim and Daughter fell asleep. Victim testified that she and Daughter drank alcohol and smoked marijuana that evening. Victim testified that she was awakened by Estes rubbing her back. Victim testified that Estes picked her up, carried her to the garage, laid her on the floor, and raped her. Victim testified that she then used the toilet, cried, and returned to bed, and Estes returned to his bedroom. Victim testified that prior to the overnight visit, Estes communicated with her via text message. When asked whether Defendant ever texted her anything inappropriate, Victim stated: "No—I mean, speaking to his daughter's friend about [his daughter's] birth control is not really appropriate." In a series of texts and oral communications, Victim told her stepmother that Estes had "gone all the way" with her, and she wanted a pregnancy test.

The propensity witness ("PW") testified as follows. During the 2014 winter holidays, PW, then fourteen years old, stayed at the home of Estes and PW's sister, who were married at the time. PW's mother and another sister also stayed with them and slept in a spare bedroom. PW slept on a mattress on the living room floor. After her mother and sisters had gone to bed, PW was preparing to lie down to sleep in the living room when Estes returned home. Estes sat down with PW on the mattress, and they talked. During the conversation, Estes began massaging PW's feet and legs. She felt uncomfortable and excused herself to the bathroom. She returned to the living

2

room and lied down on the sofa, feigning sleep. Estes sat beside PW on the sofa and continued to massage her feet and legs, working his way up to her thighs. He touched her vagina over her clothing and rubbed his penis on her legs while massaging her. Estes had inappropriate conversations with PW about sexual experiences Estes had with his wife, PW's sister.

## Procedural Background

### *Propensity Witness*

The State moved for endorsement of PW; Estes sought to exclude her testimony. At the hearing on the motions, Estes argued the acts about which PW testified in deposition did not result in rape and were therefore not similar enough for the probative value of her testimony to overcome the prejudice to Estes. The State argued that the similarities between the acts charged and those to which PW would testify made her testimony highly probative on the question of propensity. In a docket entry the trial court denied Estes' motion to exclude the propensity evidence:

> Defendant's Motion To Exclude Propensity Evidence is overruled. The Court finds that the propensity evidence in the present case has been adjudicated with a finding of guilt. At this time the Court would be inclined to allow that evidence. The Court would also be inclined to allow the victim of said offense to testify in a limited fashion, providing some detail of the facts and circumstances surrounding that incident. The parties are reminded that all pretrial rulings are interlocutory in nature and the rulings could change depending on the evidence offered at trial.

At trial, defense counsel objected again to PW's testimony, arguing that because the conduct was too dissimilar to the conduct alleged by Victim, it should not be allowed. The court again overruled the objection.

### *Rape Shield Statute*

Both the State and the defense filed pretrial motions regarding evidence of Victim's prior sexual conduct. The State sought to exclude it pursuant to the rape shield statute, § 491.015.[1] The

---

[1] Statutory citations are to RSMo (2016).

3

defense sought to admit it pursuant to the exceptions in the rape shield statute, § 491.015.1 (2) and

(3).[2] At the pretrial conference when the motions were heard, Estes argued that the two pieces of

evidence they sought to introduce—(1) a text message from Victim to her stepmother seeking a

pregnancy test due to the rape and (2) statements Victim allegedly made to Daughter that Victim

feared she was pregnant because she had unprotected sex with her boyfriend in the week before

the rape—were admissible under exceptions to the rape shield statute. Estes argued that he would

use the evidence of past sexual conduct to demonstrate Victim's motive to fabricate the allegations.

The State argued that neither statement fell under a rape-shield exception. The trial court deferred

ruling on the motions until it heard an offer of proof at trial. After hearing the offer of proof at

trial, the trial court rejected the offer of proof, finding neither exception (2) nor (3) to the rape

shield statute rendered the evidence admissible:

> It is allowable to show evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy, or disease. In this case we are not going to show any origin of semen, pregnancy, or disease. If there was a test with that and there were some - you would need some alternate explanation, then maybe, but without the evidence of semen, pregnancy, or disease, I don't think that Subsection 2 of the Statute applies.
>
> Subsection 3 talks about evidence of immediate surrounding circumstances of the alleged crime. Reading the case of State versus Cooper, it's a Southern District Court of Appeals Case, 581 S.W.3d 677, which talks about the use of that third paragraph of the statute. And reading from the opinion, the opinion says, "Victim's relationship with the boyfriend played no role in Defendant's rape of victim and was not part of the rape. There was no showing that Defendant had any connection to the boyfriend, no showing that Defendant was present during any interaction between victim and the boyfriend, or that Defendant even knew that victim had a boyfriend. The boyfriend was not present during the last rape and victim's relationship with the boyfriend apparently terminated several days before the rape. There was no showing that the boyfriend played any role in Defendant's last rape." And they conclude, "Simply put, victim's relationship with the boyfriend appears

---

[2] Section 491.015.1(2) excepts from exclusion evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy, or disease. Section 491.015.1(3) excepts from exclusion evidence of immediate surrounding circumstances of the alleged crime.

to be completely unrelated and independent of Defendant's criminal conduct." And that was part of the reasoning they used to exclude the evidence under 491.015. The Court is going to make the same conclusion in this case and the offer of proof is going to be shown as refused. And any of the proffered cross-examination is also going to be refused at this point.

## Legal Analysis

### *Standard of Review*

A circuit court is "vested with broad discretion to admit or exclude evidence." ***State v. Pierce***, 678 S.W.3d 115, 121 (Mo.App. S.D. 2023) (quoting ***State v. Tisius***, 362 S.W.3d 398, 405 (Mo. banc 2012)). We review evidentiary decisions of the trial court for abuse of that discretion, which occurs "when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." ***State v. Robinson***, 662 S.W.3d 120, 125 (Mo.App. S.D. 2023) (quoting ***State v. Peirano***, 540 S.W.3d 523, 527 (Mo.App. S.D. 2018)). Even then, we will reverse only where "the error was so prejudicial it deprived the defendant of a fair trial." ***Id.*** (quoting ***State v. Marsh***, 618 S.W.3d 625, 629 (Mo.App. S.D. 2020)).

### *Point I - Propensity Evidence*

"Propensity evidence is evidence of uncharged crimes, wrongs, or acts used to establish that defendant has a natural tendency to commit the crime charged." ***Pierce***, 678 S.W.3d at 121 (quoting ***State v. Shockley***, 410 S.W.3d 179, 193 (Mo. banc 2013)). In 2014, Missouri voters amended article I, § 18(c) of the Missouri Constitution to provide as follows:

> [I]n prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

5

This provision affords a trial court "substantial discretion in admitting or excluding [propensity] evidence even if there is a danger of some prejudice." *State v. Shepard*, 662 S.W.3d 761, 769 (Mo.App. E.D. 2023) (quoting *State v. Prince*, 534 S.W.3d 813, 821 (Mo. banc 2017)). To be excluded, "the probative value of the evidence must not simply be outweighed by, but *substantially* outweighed by, the prejudicial effect of the evidence." *Id.* Our analysis is "intensely case-specific[.]" *Id.* (quoting *State v. Williams*, 548 S.W.3d 275, 288 (Mo. banc 2018)) We consider factors outlined by the Supreme Court of Missouri in *Williams*. To have probative value, the evidence "must tend to show the defendant actually had a propensity to commit the charged crime at the time it is alleged to have occurred." *Id.* at 289. Thus, trial courts consider the "similarity between the prior criminal act and the charged crime and . . . the amount of time between the two." *Id.* A circuit court should also consider whether the State needs the propensity evidence to "prove its case." *Id.* In evaluating the prejudicial effect of the evidence, courts assess "whether the jury knows or can fairly infer the defendant was punished for his past criminal acts," whether the evidence of past criminal acts overshadows the evidence of the crime charged, and "the manner in which the State uses the evidence at trial." *Id.* at 290-91.

In evaluating unfair prejudice, courts consider the jury's awareness of whether a defendant was charged for the prior conduct, acknowledging the risk that if the jury believed the acts went unpunished then they could punish the defendant for past acts as well as those for which he or she is on trial. *Pierce*, 678 S.W.3d at 122.

> Courts evaluate the manner in which the evidence is presented, finding less risk of prejudice when past convictions are soberly read into the record and heightened risk of prejudice when emotional, personal, live testimony is introduced. Courts also consider whether the prior acts overwhelm the evidence of the charged crime or whether the prosecution spent an undue amount of time emphasizing the prior conduct.

*Id.* (citations omitted).

The similarities between the two acts at issue in this case are significant. Both acts occurred when Victim and PW were staying overnight in Estes' home, both on a mattress in the living room. Victim was thirteen years old; PW was fourteen years old. Both acts began with massaging by Estes that evolved into sexual conduct. Estes had communicated via text with both victims. PW testified that Estes communicated with her about sexual acts with his wife, PW's sister. PW believed these conversations were inappropriate. Prior to raping Victim, Estes communicated with her via text messages, some of which concerned Daughter receiving birth control shots. Victim believed these to be inappropriate.

Estes' argument that the acts were not similar because he did not rape PW is unavailing. The actions attributed to Estes by both Victim and PW are eerily similar and highly probative of Defendant's ongoing propensity to commit the crime charged. We find no abuse of discretion in the trial court's admission of the propensity evidence. Moreover, the State needed PW's testimony to make its case. There were no witnesses to the rape, no forensic evidence was produced, and there was no confession. Thus, this was a "she-said, he-said" case, for which the propensity evidence was highly probative.

The risk of unfair prejudice to Estes was low. The jury was unlikely to have sought punishment for Estes' acts against PW, because first, as noted above, the alleged acts did not result in rape. To the extent that the jury was inclined to punish Estes for his acts against PW, the trial judge and defense counsel acted to minimize that possibility. The trial judge instructed the jury that the only charge before the court was one count of rape of Victim, and during closing argument defense counsel informed the jury that Estes was not on trial for the acts against PW, but for the

7

acts against Victim.[3] PW's direct testimony was a simple recitation of the facts comprising only a few transcript pages. Nothing in the record suggests that PW's testimony was overly emotional. Finally, the acts described by PW did not overshadow the evidence of the charged crime. *Shepard*, 662 S.W.3d at 771.

For these reasons, we do not believe the danger of unfair prejudice to Estes substantially outweighed the probative value of PW's testimony. We therefore find no abuse of discretion or resulting prejudice to Estes. Point I is denied.

### Point II - Rape Shield Statute

The "rape shield" statute, as § 491.015 is commonly known, "creates a presumption that evidence of a victim's prior sexual conduct is irrelevant." *McIntosh v. State*, 413 S.W.3d 320, 331 (Mo. banc 2013) (citing *State v. Brown*, 636 S.W.2d 929, 933 (Mo. banc 1982) (other citation omitted)). Such evidence is inadmissible unless it falls into one of the four exceptions delineated in the statute. *State v. Rycraw*, 507 S.W.3d 47, 56-57 (Mo.App. E.D. 2016). Falling within an exception, alone, does not render otherwise precluded evidence admissible. *Id.* "If one of the statutory exceptions is met, 'the evidence is admissible only to the extent that the evidence is also relevant to a material fact or issue.'" *State v. Cooper*, 581 S.W.3d 677, 681 (Mo.App. S.D. 2019) (quoting *Rycraw*, 507 S.W.3d at 56-57) (internal punctuation omitted). *See also State v. Beck*, 557 S.W.3d 408, 423-24 (Mo.App. W.D. 2018).

Of the four statutory exceptions to inadmissibility, Estes argues two are applicable here: first, under subsection (2), "[e]vidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;" and second, under subsection (3), "[e]vidence

---

[3] "Now, as far as [PW], nowhere in that verdict director, nowhere for you to decide guilty or not guilty includes [PW]. . . . You are not here to decide guilty or not guilty with [PW]."

8

of immediate surrounding circumstances of the alleged crime[.]" Section 491.015.1.

The two pieces of evidence Estes sought to introduce via exceptions to the statute were (1) Victim's statements to her stepmother that she wanted a pregnancy test due to the rape; and (2) Daughter's testimony that Victim told Daughter Victim feared she might be pregnant after having had unprotected sex with her boyfriend in the week preceding the alleged rape. Estes' purpose in seeking to introduce this evidence was to demonstrate that Victim had motive to fabricate her allegation of rape, to wit: Victim needed a ruse involving non-consensual sex to justify asking her stepmother for a pregnancy test.

After hearing Estes' offer of proof, the trial court excluded both pieces of evidence because they did not fall under a designated statutory exception to the rape shield statute. First, the trial court determined that Victim's statement to her stepmother as part of Victim's disclosure of the rape that she wanted a pregnancy test did not fall under subsection 2 of the exceptions to the rape shield statute. The trial judge determined:

> In this case we are not going to show any origin of semen, pregnancy, or disease. If there was a test with that and there were some - you would need some alternate explanation, then maybe, but without the evidence of semen, pregnancy, or disease, I don't think that Subsection 2 of the Statute applies.

Regarding the statements Daughter testified to in the offer of proof, the trial court found that these were not admissible under the third exception to the rape shield statute. Relying on *State v. Cooper*, *supra*, the trial court determined that Victim's alleged prior sexual activity was wholly unrelated to the circumstances of the rape. As in *Cooper*, the trial court excluded the evidence. We find no abuse of discretion in the trial court's rejection of the evidence under exceptions 2 or 3 of the rape shield statute.

However, an additional narrow exception to the rape shield statute's exclusion of evidence exists "based on a criminal defendant's right to a fair trial required by the concept of due process."

9

***Cooper***, 581 S.W.3d at 681.  Under this exception, if

> "the State seeks to introduce evidence to prove a defendant's guilt or draw for the jury an inference from which to show a defendant's guilt, the rape shield statute may not be used to prohibit the defendant from introducing contrary evidence without violating a defendant's constitutional right to a fair trial."

***Id.*** at 681-82 (quoting ***State v. Gorman***, 468 S.W.3d 428, 434 (Mo.App. W.D. 2015)).  This narrow "'right to a fair trial' exception to section 491.015 does not apply when the evidence is relevant merely to impeach a victim's credibility *and* does not directly refute evidence that tends to show a defendant's guilt."  ***Id.*** at 682 (emphasis added); *see also* ***State v. Parry***, 703 S.W.3d 706, 712 (Mo.App. S.D. 2024).

"When contradiction evidence is sought to be used for impeachment purposes [in a case to which the rape shield statute applies], it [is] not admissible if the contradiction relates to a collateral matter."  ***State v. Washburn***, 702 S.W.3d 180, 192 (Mo.App. W.D. 2024) (second alteration in original) (quoting ***State v. Taylor***, 466 S.W.3d 521, 530 (Mo. banc 2015)).  In certain unusual situations, however, the credibility of a witness is "materially significant for deciding central issues in the case and the introduction of extrinsic evidence is more probative than prejudicial."  ***Id.*** at 193 (citing ***State v. Long***, 140 S.W.3d 27, 30 (Mo. banc 2004)).

> In some cases, . . . the rule excluding extrinsic evidence . . . fails to serve [the purpose of focusing the fact-finder on the most probative facts] by shielding the fact-finder not from collateral issues, but from a central issue in the case.  An issue is not collateral if it is a "crucial issue directly in controversy."  Where, as in this case, a witness' credibility is a key factor in determining guilt or acquittal, excluding extrinsic evidence . . . deprives the fact-finder of evidence that is highly relevant to a crucial issue directly in controversy[:]  the credibility of the witness.  An evidentiary rule rendering non-collateral, highly relevant evidence inadmissible must yield to the defendant's constitutional right to present a full defense.  MO. CONST. art. 1, section 18(a).

***Long***, 140 S.W.3d at 30-31 (internal citation omitted).

Estes did not raise his "fair trial" exception argument in the trial court, thus it was not

preserved for appeal. ***State v. Davis***, 348 S.W.3d 768, 770 (Mo. banc 2011) (issue not presented to or decided by trial court is not preserved for appellate review). We have discretion to review unpreserved claims of error on appeal, but only for plain error. ***State v. Brandolese,*** 601 S.W.3d 519, 526 (Mo. banc 2020). "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.[4] Plain error review should be indulged "sparingly" and "may not be used to justify a review of every point that has not been otherwise preserved for appellate review." ***Brandolese***, 601 S.W.3d at 526 (quoting ***State v. Jones***, 427 S.W.3d 191, 195 (Mo. banc 2014)). Plain error review is a two-step process. ***State v. Hunt***, 451 S.W.3d 251, 260 (Mo. banc 2014). First, we consider whether the claimed error is "plain error" that affects "substantial rights." Rule 30.20. Error is plain when it is "evident, obvious, and clear." ***State v. Baumruk,*** 280 S.W.3d 600, 607 (Mo. banc 2009) (citation omitted). "Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected." ***Hunt***, 451 S.W. 3d at 260. Under these standards, we determine that the trial court's exclusion of the two statements is plain error affecting substantial rights because manifest injustice or miscarriage of justice could result if left uncorrected.

Here, we have one of the unusual circumstances in which the "fair trial" exception to the rape shield statute applies to the statements made by Victim to her stepmother asking for a pregnancy test arising from Victim's concern that she might have been impregnated during the alleged rape and Victim's alleged statements to Daughter that Victim feared she was pregnant from unprotected sex with her boyfriend. Victim's accusation that Estes raped her was not corroborated

---

[4] Rule references are to Missouri Court Rules (2024).

11

by any forensic evidence or eyewitness testimony. In limited situations like this case, where the evidence is strictly of a "she-said, he-said" nature, the "fair trial" exception precludes using the rape shield statute to exclude Estes' evidence directly challenging Victim's testimony, as such exclusion would violate Estes' constitutional right to a fair trial. *See Cooper*, 581 S.W.3d at 681-82; *Washburn*, 702 S.W.3d at 193; *Long*, 140 S.W.3d at 30 (extrinsic evidence can be used to challenge the prosecuting witness where that witness' testimony is "a key factor in determining guilt or acquittal").

The two statements coupled together, if believed by the jury, could support Estes' theory that Victim had a motive to and might have fabricated her story that Estes raped her. The materiality of this evidence (and its exclusion) was demonstrated during the State's closing and rebuttal arguments, when the prosecutor repeatedly referred to the absence of evidence that Victim had any motivation to lie in accusing Estes. In fact, the prosecutor argued, "There is no motive to lie, which I think is probably *the biggest thing you have here*. If you need a motive to make something up, *and if that's not there, then that's the truth*. That is how we uncover the truth in situations . . . ." (Emphasis added.) The jury was entitled to hear Daughter's testimony that Victim feared pregnancy by another and the text to Victim's stepmother that Victim wanted a pregnancy test due to the rape, because these matters are material to Estes' ability to directly refute the only evidence tending to show his guilt. *See Parry*, 703 S.W.3d at 712. It was the responsibility of the jury to weigh the Victim's statements against the contradictory evidence and determine whether Victim's story was credible or whether Daughter's testimony casts doubt upon it.

Due to plain error in excluding the evidence at issue, we vacate and remand the case for retrial and instruct the trial court to permit Estes to introduce (1) Victim's statements to her stepmother that Victim wanted a pregnancy test; and (2) Daughter's testimony that Victim told

12

Daughter Victim feared she might be pregnant after having had unprotected sex with her boyfriend in the week preceding the rape.

JACK A. L. GOODMAN, J. – OPINION AUTHOR

BECKY J. WEST, J. – CONCURS

MATTHEW P. HAMNER, J. – CONCURS