STATE of Missouri, Respondent,

v.

Bruce T. HEDGES, Appellant.

No. ED 86276.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 13, 2006.

Charles E. Bridges, William N. Seibel, Jr., Attorneys at Law, St. Charles, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Bruce T. Hedges ("Defendant"), appeals the judgment of the Circuit Court of Montgomery County finding him guilty, after a jury trial, of domestic assault in the second degree, section 565.073, RSMo 2000.[1] Defendant was sentenced to two years of imprisonment in the Missouri Department of Corrections. We affirm.

The following is the evidence in the light most favorable to the trial court's decision:

On the morning of March 12, 2004, Defendant and his wife, Joann Hedges ("Wife") got into a fight. In the course of the fight, Defendant bit off a piece of Wife's right ear. After the incident, Wife called 911 and reported some details of the incident. At approximately 9:00 a.m., Deputy Sheriff Jeff Merkel ("Deputy Merkel") received a dispatch and drove to Defendant's home at 891 Cedar Ridge in Warren County. When Deputy Merkel drove into Defendant's subdivision, he saw Defendant standing approximately 300 yards from his house. Defendant told Deputy Merkel that he was the one Deputy Merkel was looking for, and further explained that he and Wife had been fighting and that he "did what he had to do."

After another deputy arrived, Deputy Merkel went to Defendant's home and talked with Wife. She was holding a towel against her ear, and there was a substantial amount of blood on the towel and on her ear. A portion of her ear was missing. Later that afternoon, after being advised of his *Miranda* rights, Defendant admitted that he had bitten Wife and slapped her in the face.

Defendant was charged by complaint with the class C felony of domestic assault in the second degree. After a trial by

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

jury, Defendant was found guilty and eventually sentenced to two years of imprisonment in the Missouri Department of Corrections. This appeal by Defendant followed. Defendant does not contest the sufficiency of the evidence presented against him.

In his first point on appeal, Defendant asserts the trial court plainly erred in denying his motion in limine, which would have prevented the State from calling Wife as a witness and asking her if she was refusing to testify by invoking the spousal privilege.

■ The husband or wife of the accused shall not be required to testify. Section 546.260.1. As distinguished from a failure to object, when an affirmative waiver is made by defense counsel then even plain error review is not warranted. *See State v. Goudeau,* 85 S.W.3d 126, 128–29 (Mo. App. S.D.2002).

Before the trial began, the State asserted its intention to call Wife to the stand to show the jury her ear and ask her if she was electing to invoke the spousal privilege. The trial court ruled that the State could call Wife to the stand to show the jury her damaged ear because this was not testimonial, but delayed a decision concerning the mentioning of Wife's use of the spousal privilege.

After voir dire, the court indicated that it did not "think it's inappropriate at all ... to allow some sort of statement that [Wife's] declining to testify because of the ... spousal privilege...." During the trial, the issue of whether the State could ask Wife about her invocation of the spousal privilege was again raised before Wife took the stand. At this time, the court said, "[w]ell, the way we had talked about [the prosecutor] asking his second question is basically do you still intend to take the privilege." To which defense counsel replied, "Okay. Then I'm fine with that."

The State proceeded to call Wife to the stand and ask her about her intention to invoke the spousal privilege. The State also had Wife show the jury her damaged ear. No objection was made by defense counsel when Wife was on the witness stand.

■ Because of the statement "Okay. Then I'm fine with that," defense counsel affirmatively waived any objection to the State asking Wife if she intended to invoke the marital privilege. Furthermore, Defendant does not dispute that Wife's demonstration of her ear was not "testimony," and, thus, this evidence did not violate the marital privilege. Therefore, the trial court did not err in allowing the State to ask Wife about whether she was invoking the marital privilege and in allowing the State to show the jury Wife's damaged ear. Point denied.

In his second point on appeal, Defendant alleges the trial court erred in denying his motion in limine, which allowed the State to introduce into evidence a 911 tape of Wife talking to a police dispatcher, because the evidence violated Defendant's Sixth Amendment right to confront Wife as a witness.

■ Under the Confrontation Clause of the Sixth Amendment, the accused has the right to be confronted with the witnesses against him. *State v. Costa,* 11 S.W.3d 670, 679 (Mo.App. W.D.1999). "Testimony given at a properly held preliminary hearing satisfies the requirements of the [C]onfrontation [C]lause of the Sixth Amendment when the witness is unavailable to testify at trial." *State v. Griffin,* 848 S.W.2d 464, 470 (Mo.banc 1993).

■ Defendant argues that, because Wife invoked the marital privilege and refused to testify, she was an unavailable witness and therefore he was denied his

Sixth amendment right to confront her as a witness and question her concerning the statements she made on the 911 tape. We will assume *arguendo* for purposes of the appeal, that the 911 tape was "testimonial." Nonetheless, Wife testified at the preliminary hearing. Defendant claims that he had no real opportunity to cross-examine Wife during the preliminary hearing because he did not have an attorney present to represent him. However, the record reveals that Defendant appeared for the preliminary hearing "in person and *with counsel.*" (emphasis added). Therefore, because Defendant had the opportunity to confront and cross-examine Wife during the preliminary hearing, his Sixth Amendment right to confrontation was not violated. Point denied.

In his third point on appeal, Defendant contends the trial court erred in denying his motion in limine because Wife's statements recorded on the 911 tape were hearsay.

■■■ The excited utterance exception to the rule against hearsay applies when: (1) a startling event or condition occurs; (2) the statement is made while the declarant is still under the stress of the excitement caused by the event and has not had an opportunity to fabricate the story; and (3) the statement relates to the startling event. *State v. Post,* 901 S.W.2d 231, 234 (Mo.App. E.D.1995). Because an excited utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been fully brought to bear by reasoned reflection, the utterance may be taken as trustworthy and received as testimony. *Id.*

■■■ Defendant claims that the statements made by Wife in the 911 tape do not qualify as excited utterances. However, there is evidence that Wife made the 911 call shortly after part of her ear had been bitten off by Defendant. Additionally, considering the nature of the assault by Defendant, it was reasonable for the trial court to conclude that Wife was under stress and was excited when she made the 911 call. Finally, the utterances related to the assault on Wife by Defendant. Therefore, the trial court did not err in finding that Wife's statements on the 911 tape constituted excited utterances. Point denied.

In his fourth point on appeal, Defendant maintains the trial court erred in allowing the admission of the 911 tape into evidence because this admission violated the best evidence rule.

■■■ The best evidence rule states the law's preference for producing a writing or recording when its terms or contents are at issue. *State v. Hill,* 918 S.W.2d 287, 288 (Mo.App. E.D.1996). If the contents of a writing or recording are not directly in issue, even though the evidence contained in the writing may bear upon a fundamental issue in the case, the best evidence rule does not apply and secondary evidence may be used without accounting for the original document. *State v. Fleer,* 851 S.W.2d 582, 592 (Mo.App. E.D.1993).

■■■ Defendant argues that the original copy of the 911 tape was not admitted into evidence and the State did not give any explanation as to why the original tape had not been produced. However, in this case, the actual content of the 911 tape was never in dispute and, as a result, the best evidence rule is inapplicable. Therefore, the trial court did not err in failing to exclude the 911 tape based upon the best evidence rule. Point denied.

In his fifth point on appeal, Defendant argues the trial court erred by allowing the State to endorse witness James Rotash ("Rotash"), an EMT for the Warren Coun-

ty Ambulance District, and allowing him to testify, because the late endorsement resulted in fundamental unfairness or prejudice to the substantial rights of Defendant.

A trial court has broad discretion in permitting the late endorsement of witnesses. *State v. Williams,* 853 S.W.2d 371, 373 (Mo.App. E.D.1993). We will only reverse for an abuse of discretion resulting in fundamental unfairness. *Id.*

On the day prior to the trial, the State mailed the defense notice that it intended to endorse Rotash as a witness. On the day of the trial, the trial court granted the State's motion to endorse Rotash as a witness. Defendant argues that this late endorsement allowed his counsel no opportunity to interview or depose Rotash.

Rotash's brief testimony revealed that he arrived at the scene of the crime on March 12, 2004, saw a piece of skin missing from Wife's ear and Wife refused medical treatment. However, this was not the only evidence indicating that Wife had lost a piece of her ear. Rather, evidence of damage to Wife's ear was established by, *inter alia,* the testimony of Deputy Merkel, the 911 tape, and Wife's demonstration of her ear to the jury. Thus, Defendant did not suffer fundamental unfairness as a result of Rotash's testimony. Therefore, the trial court did not abuse its discretion in allowing the State to endorse Rotash and present his testimony to the jury. Point denied.

In his sixth point on appeal, Defendant asserts the trial court erred by allowing the State to introduce evidence during the penalty phase of the trial which suggested that Defendant would be placed in a long-term alcohol treatment program if he received a prison sentence in the Missouri Department of Corrections as opposed to a Warren County Jail sentence. Defendant also complains that the State was allowed to mention during closing argument that a sentence in the Missouri Department of Corrections would mean that Defendant would automatically end up in an alcohol treatment program.

During the penalty phase of the trial, the trial court has broad discretion to admit whatever evidence it determines to be helpful to the jury in assessing punishment. *State v. Gill,* 167 S.W.3d 184, 195 (Mo.banc 2005). A wide range of evidence is admissible in the penalty phase, including the nature and circumstances of the offense and the history and character of the defendant. *State v. Berry,* 168 S.W.3d 527, 536 (Mo.App. W.D.2005).

During the penalty phase of the trial, the trial court allowed the State to question Deputy William Ingrassia ("Deputy Ingrassia") concerning alcohol treatment programs available in the Missouri Department of Corrections and the Warren County Jail. Deputy Ingrassia testified that the Missouri Department of Corrections has a two-year intoxication abuse program for people who need long-term treatment. Defendant claims he was prejudiced by this line of questioning and the State's closing argument, because it led the jury to believe that they had to give him a prison sentence in Missouri Department of Corrections rather than a Warren County Jail sentence so as to guarantee long-term alcohol treatment.

Discussion of potential alcohol treatment programs was evidence the trial court could have properly deemed helpful to the jury in assessing punishment in light of the evidence that Defendant had an alcohol problem and was drunk at the time of the assault on Wife. Furthermore, the State never promised the jury that Defendant would automatically be placed in a long-term alcohol treatment program if he served a prison sentence in the Mis-

souri Department of Corrections. The State just indicated that it would "recommend" to the trial court a long-term alcohol treatment program for Defendant if he was sentenced to the Missouri Department of Corrections. Finally, despite Defendant's assertions to the contrary, the State did not misstate the law as to alcohol treatment programs within the Department of Corrections. Therefore, the trial court did not abuse its discretion by allowing the State to introduce evidence, during the penalty phase of the trial, that Defendant could possibly be placed in a long-term alcohol treatment program if sentenced to the Missouri Department of Corrections. Point denied.

In his seventh point on appeal, Defendant contends the trial court erred in denying his motion to suppress statements he made to the police because the trial court erred in failing to hold a pre-trial hearing on the motion.

■ This particular argument was not made in Defendant's motion for a new trial. If a claim of error is not raised in a motion for new trial, then it is not preserved for appellate review. *State v. Miller*, 162 S.W.3d 7, 16 (Mo.App. E.D.2005). A claim which is not properly preserved can be reviewed at our discretion for plain error. *Id.* Under plain error review, we will only reverse the decision of the trial court if it was a plain error affecting a substantial right that results in manifest injustice or a miscarriage of justice. *Id.*

Defendant did not file a motion to suppress the statements he made to the police until the day of the trial. The trial court denied Defendant's motion to suppress without a pre-trial suppression hearing. At this point, the trial court commented to Defendant's counsel that "I think you need to raise the issue again during trial, at least make the motion up at the bench and we'll take it up then and we can take it as a continuing objection if the motion is again denied." During the trial, while Deputy Merkel was on the witness stand, Defendant renewed his motion to suppress, which was again denied by the trial court. Deputy Merkel then testified that, pursuant to an interrogation, Defendant admitted to biting Wife and slapping her in the face.

■ Because of the overwhelming amount of evidence proving Defendant's guilt, we find that manifest injustice is not present even if, assuming *arguendo*, the trial court erred in failing to hold a pre-trial suppression hearing in this case. Defendant's comment to Deputy Merkel that he "did what he had to do" was made outside of an interrogation, and it is not disputed that this that statement was properly admitted even if later statements made during interrogation were not admissible. Additional evidence incriminating Defendant includes: (1) the statement Wife made during her 911 call that Husband bit off a piece of her ear; and (2) Scott Hedges', Defendant's son, testimony that Defendant and Wife were arguing on the morning in question and that he learned before the trial that Defendant had bitten off a piece of Wife's ear. Therefore, the trial court did not plainly err in failing to hold a pre-trial suppression hearing. Point denied.

Based upon the foregoing, we affirm the judgment of the trial court.