**STATE of Missouri, Plaintiff-Respondent,**

v.

**Howard B. GOTT, Defendant-Appellant.**

No. SD 34324

Missouri Court of Appeals,
Southern District,
Division One.

Filed: July 5, 2017

575

Attorney for Appellant: Margaret M. Johnston of Columbia, MO.

Attorney for Respondent: Joshua D. Hawley, Atty. Gen., Gregory L. Barnes, Asst. Atty. Gen., of Jefferson City, MO.

JEFFREY W. BATES, P.J.

After a jury trial, Howard Gott (Defendant) was convicted of second-degree assault and armed criminal action. Although Defendant presents ten points on appeal, the alleged errors fall into two groups: challenges to the admission of various statements pursuant to the excited-utterance exception to the hearsay rule (Points 1 through 4); and challenges to the admission of evidence relating to Defendant's post-*Miranda*[1] silence in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (Points 5 through 10). We affirm because: (1) we find no abuse of discretion in the admission of the challenged statements as excited utterances; and (2) Defendant "opened the door" to the State's references to Defendant's post-*Miranda* silence.

**Factual and Procedural Background**

We view the evidence in the light most favorable to the verdicts. *State v. Taylor*, 298 S.W.3d 482, 491 (Mo. banc 2009); *State v. Johns*, 34 S.W.3d 93, 103 (Mo. banc 2000). Viewed from this perspective, the following evidence was adduced at trial.

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Defendant, Larry Morris (Victim), John Carter (Carter) and Carl Dean (Dean) went fishing on Bull Shoals Lake. They departed from the Nolan's Point boat landing in two boats. Victim and Defendant were in one, while Carter and Dean were in the other. Victim and Defendant fished anywhere from one and one-half miles to ten miles away from Nolan's Point. The two boats initially remained close, but they ultimately separated to the point that the fishermen in one boat could not see the fishermen in the other boat.

Defendant moved to the back of the boat where Victim was fishing and asked to use his new fishing pole. As Victim and Defendant exchanged poles, Jerry Maggard (Maggard) sat on the lakeshore fishing and made small talk with Victim. Shortly after Victim and Defendant exchanged poles, Defendant cut the right side of Victim's throat with a knife. Defendant continued to stab Victim in the neck, arm, chest, thumb, hand and face. Victim fought back, asking "why" and telling Defendant to stop. Victim yelled at Maggard to call 911, but Defendant did not speak.

Defendant dropped his knife at some point during the struggle, and Victim kicked Defendant into the lake. After Victim wrapped his sweatshirt around his neck as an impromptu tourniquet, he drove the boat back to Nolan's Point. He met the owners of Nolan's Point Resort, Sherry Lease (Sherry) and Ron Lease (Ron), and asked them for help. Victim told Sherry and Ron that his friend had tried to kill him. Victim then asked Ron to call Carter and Dean, and inform them of Victim's location. Carter and Dean soon arrived at Nolan's Point, and Victim told them that Defendant had cut his throat. Victim was taken to Cox Hospital in Springfield by helicopter, where he was in surgery for several hours. His wounds were closed using stitches and approximately 85 staples.

After law enforcement officers arrived, Carter and Dean transported two officers on the lake by boat to find Defendant. The officers arrested Defendant and read him his *Miranda* rights. Defendant was charged with first-degree assault and armed criminal action. He was convicted of the lesser-included offense of second-degree assault and armed criminal action. This appeal followed. Additional facts necessary to the disposition of the case will be included below as we address Defendant's ten points.

## Points 1 through 4—Excited-Utterance Exception to Hearsay

 Defendant's first four points claim that certain statements Victim made to Sherry (Point 1), Ron (Point 2), Dean (Point 3) and Carter (Point 4) were improperly admitted at trial under the excited-utterance exception to the general prohibition against hearsay evidence.[2]

 A trial court's decision to admit hearsay evidence is reviewed for an abuse of discretion. *State v. Hosier*, 454 S.W.3d 883, 896 (Mo. banc 2015). A trial court abuses its discretion when "a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State*

**2.** Points 1 through 4 also argue that reversal is warranted for the additional legal reason that the testimony constituted improper bolstering. Raising two legal bases for reversal in one point renders the point multifarious and preserves nothing for appellate review. *State v. Robinson*, 454 S.W.3d 428, 437 n.6 (Mo. App. 2015). This Court has discretion to review arguments made in multifarious points, but we decline to do so here because Defendant has presented minimal argument under each point relating to this alleged legal error. Furthermore, Defendant has not set forth whether and how each claim of improper bolstering is preserved for our review.

*v. Gonzales*, 153 S.W.3d 311, 312 (Mo. banc 2005). We will not reverse for an error in the admission of evidence unless "there is a reasonable probability that the error affected the outcome of the trial." *State v. Shelton*, 314 S.W.3d 769, 773 (Mo. App. 2009).[3]

"A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." *State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997). A hearsay statement is generally inadmissible unless it falls within a recognized exception. *Id.* The excited-utterance exception applies "when: (1) a startling event or condition occurs; (2) the statement is made while the declarant is still under the stress of the excitement caused by the event and has not had the opportunity to fabricate the story; and (3) the statement relates to the startling event." *State v. Hedges*, 193 S.W.3d 784, 788 (Mo. App. 2006). "The essential test for admissibility of a spontaneous statement or excited utterance is neither the time nor place of its utterance but whether it was made under such circumstances as to indicate it is trustworthy." *State v. Van Orman*, 642 S.W.2d 636, 639 (Mo. 1982). When statements are "made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of

self-interest could not have been fully brought to bear by reasoned reflection, the utterance may be taken as trustworthy and received as testimony." *Hedges*, 193 S.W.3d at 788.

Among the factors to be considered [in determining whether an excited utterance exists] are [1] the time between the startling event and the declaration, [2] whether the declaration is in response to a question, [3] whether the declaration is self-serving, and [4] the declarant's physical and mental condition at the time of the declaration. While no one factor necessarily results in automatic exclusion, all should be considered in determining whether the declaration was the result of reflective thought.

*Bynote v. Nat'l Super Markets, Inc.*, 891 S.W.2d 117, 122 (Mo. banc 1995) (brackets in original).

Point 1 challenges the admission of Sherry's testimony that Victim said his "buddy had tried to kill him." At trial, Sherry testified that she and Ron "heard a truck and trailer come up the launch road real quickly and a fella got out of the truck and asked us to call 911 because he had been stabbed on the lake." Victim "had a shirt or jacket or something wrapped around his neck and he was just covered in blood." Victim "was very scared ... pretty agitated, upset."[4] When asked whether Sherry had heard Victim say anything,

---

**3.** Although we conclude that the trial court committed no error in the admission of the evidence challenged in Points 1 through 4, Defendant has failed, in any event, to establish prejudice. "Hearsay evidence is objectionable because the person who makes the offered statement is not under oath and is not subject to cross-examination." *State v. Bowens*, 964 S.W.2d 232, 240 (Mo. App. 1998). Here, the declarant of the challenged statements, Victim, testified at length regarding the attack and was subjected to cross-examination. "[P]rejudice will not be found from the admission of hearsay testimony where the declarant was also a witness at trial, testified

on the same matter, and was subject to cross-examination because the primary defects in hearsay testimony are alleviated." *State v. Jackson*, 426 S.W.3d 717, 719 (Mo. App. 2014).

**4.** Defendant testified that he swam to shore and waited there 10-20 minutes until Carter and Dean returned with law enforcement officers, who then arrested Defendant. All of the statements challenged as hearsay in Points 1 through 4 were made during that 10-20 minute time period.

Defendant asserted a hearsay objection. The court overruled the objection "based upon excited utterance." Sherry then testified that Victim "said that his buddy had tried to kill him."

■ The trial court did not abuse its discretion in allowing Sherry to testify about Victim's statements to her. The evidence supported the inference that Victim's statements were made 10-20 minutes after he was stabbed. The statements were made spontaneously, rather than in response to questions. Victim's statements were not self-serving. In the context of a criminal case, the self-serving factor focuses on exculpatory statements by a defendant that are the result of reflective thought. *See State v. Williams*, 673 S.W.2d 32, 35 (Mo. banc 1984); *State v. Gray*, 347 S.W.3d 490, 501 (Mo. App. 2011); *State v. Thomas*, 272 S.W.3d 421, 429 (Mo. App. 2008); *State v. Smith*, 265 S.W.3d 874, 878 (Mo. App. 2008); *State v. Stottlemyre*, 752 S.W.2d 840, 843 (Mo. App. 1988); *State v. Boyland*, 728 S.W.2d 583, 585-86 (Mo. App. 1987). A victim's identification of the defendant as the perpetrator of the crime is not self-serving. *See, e.g., State v. Dixon*, 495 S.W.3d 812, 819-20 (Mo. App. 2016); *State v. Turner*, 420 S.W.3d 666, 670-71 (Mo. App. 2014). Victim's mental and physical state at the time support the conclusion that he was under the immediate and uncontrolled domination of his senses when he made the statements. *Van Orman*, 642 S.W.2d at 639. Therefore, the trial court did not

abuse its discretion in admitting Victim's statements to Sherry pursuant to the excited-utterance exception to the hearsay rule. Point 1 is denied.

Point 2 challenges the admission of Ron's testimony that Victim said his buddy had tried to kill him and was crazy. At trial, Ron testified that Victim was "bleeding all over ... bleeding really bad" and "looked like he was in pain a lot." Every time Victim would talk, blood "would squirt out." Victim was nervous and "kept saying he was scared, you know, like he was going to not make it." Ron testified that, "[a]s soon as I saw him first thing when he got out of the truck walking toward me he said, My f-ing buddy tried killing me. He said, he is f-ing crazy. That was his first statement to me."

■ A trial court's discretionary ruling to admit evidence is presumed correct, and the burden is on Defendant to overcome that presumption. *See State v. Adams*, 443 S.W.3d 50, 53 (Mo. App. 2014). Defendant did not object to any of Ron's testimony, so Point 2 may only be reviewed for plain error.[5] An appellate court's decision to engage in plain error review is discretionary. *State v. Dean*, 382 S.W.3d 218, 223 (Mo. App. 2012). Because Victim's statements to Ron were so similar to those properly admitted during Sherry's testimony, we decline to engage in plain error review and deny Point 2.

---

5. Defendant argues that Point 2 is preserved because he objected to Sherry's testimony, which was introduced before Ron was called as a witness, and Ron's testimony was objectionable for the same reason as Sherry's. We disagree. Objections to challenged testimony must typically be made at the time that testimony is offered. *State v. Turner*, 94 S.W.3d 464, 468 (Mo. App. 2003); *State v. Mahoney*, 70 S.W.3d 601, 605 (Mo. App. 2002). "[C]ourts have recognized an exception to this rule when testimony on a particular subject is objected to the first time it is offered and the court makes clear that it is rejecting the objection to all evidence of the same type." *Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 133 (Mo. banc 2007). That exception does not apply here because the trial court did not make clear that it was rejecting the objection to all evidence of the same type when it overruled Defendant's objection to Sherry's testimony.

In Points 3 and 4, Defendant contends the trial court abused its discretion in admitting: (1) Dean's testimony that Victim said Defendant had cut Victim's throat; and (2) Carter's testimony that Victim said Defendant had stabbed Victim and tried to cut his throat. Because the errors asserted in Points 3 and 4 were preserved and involve essentially the same testimony, we consider the two points together.

Dean gave the following relevant testimony. After Carter received a phone call from Ron reporting that Victim was injured, Dean and Carter "took off" toward Nolan's Point. When they arrived, "[Victim] was laying back in a chair, blood everywhere, freaking, I mean, a mess." Victim tried to tell Dean and Carter what happened, but Victim was "in hysterics" and "blood was spurting." The State asked what Victim said, but Defendant objected that the answer would be "bolstering hearsay" that was "not an excited utterance because excited utterance is the event that happens at the time and this is over minutes later." The trial court overruled the objection because the court was "satisfied the event was still happening." Dean then testified that "[Victim] said that [Defendant] cut his throat." The State then asked whether Victim stated why Defendant had cut his throat. Dean testified that Victim said "he had no idea, he said they were just sitting there fishing and not saying, you know, nothing . . . just sitting there fishing and said the next you know he jumped off the deck with a knife and went to try to cut his throat, you know, stabbing and cutting his throat, you know." Carter testified that after Ron called him, he and Dean drove their boat back to Nolan's Point. Carter tried to stop Victim's bleeding, but he could not. Victim was still "real scared." When the State asked Carter if Victim said anything, Defendant objected that the statement would not be an excited

utterance, but the trial court overruled the objection. Carter then testified that Victim said Defendant came up "behind him and stabbed him and tried to cut his throat. Stabbed him multiple times."

We find no abuse of discretion by the trial court in its decision to admit Victim's statements to Carter and Dean as excited utterances. Although Victim's statements to Carter and Dean occurred sometime after Victim's statements to Sherry and Ron, all of these statements occurred within 10-20 minutes of when Victim was stabbed. Statements made under similar circumstances, but after a longer passage of time, have been held to qualify as excited utterances. *See, e.g.,* **State v. White**, 621 S.W.2d 287, 295 (Mo. 1981) (statement made one hour after the startling event qualified as an excited utterance considering the victim's cuts and gunshot wounds, and the fact that victim was still "very excited, nervous, upset and talkative"). Points 3 and 4 are denied.

### Points 5 through 10—Post-*Miranda* Silence

Points 5 through 10 contend the State impermissibly elicited evidence of Defendant's post-*Miranda* silence in violation of **Doyle v. Ohio**, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (Points 5-9), and commented on that evidence during closing argument (Point 10). The State counters that defense counsel's opening statement opened the door for the State to present evidence and argument on this subject.

Defendant's points are all based upon alleged violations of his Fifth Amendment privilege against self-incrimination:

The Fifth Amendment commands that no person shall be compelled in any criminal case to be a witness against

himself. *Estelle v. Smith*, 451 U.S. 454, 462, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). The privilege against self-incrimination is safeguarded after arrest by the mandatory warning procedures outlined in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which include the requirement that police warn those taken into custody that they have the right to remain silent. *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995); *see also State v. Dexter*, 954 S.W.2d 332, 337 (Mo. banc 1997). In *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that if a defendant is silent at the time of arrest and after receiving *Miranda* warnings, using that silence to impeach the defendant violates the due process clause of the Fourteenth Amendment. *Dexter*, 954 S.W.2d at 337. "The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony." *Wainwright v. Greenfield*, 474 U.S. 284, 292, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). *State v. Mahan*, 971 S.W.2d 307, 314 (Mo. banc 1998).

▮▮▮ Evidence that might otherwise be inadmissible, however, can become admissible when a party opens the door to that evidence with a theory presented in opening statements. *State v. Shockley*, 410 S.W.3d 179, 194 (Mo. banc 2013). When one party injects an issue into the case with a theory presented during opening statements, the opposing party may admit evidence that would otherwise be inadmissible to explain or counteract negative inferences raised by the injected issue. *Id.*; *see also State v. Tisius*, 362 S.W.3d 398, 409 (Mo. banc 2012). The State may offer evidence regarding an issue injected by a defendant, notwithstanding the fact that the evidence may be prejudicial to the defendant. *State v. Watson*, 391 S.W.3d 18, 23 (Mo. App. 2012).

The following additional facts are relevant to these points. Deputies Winston Collins (Deputy Collins) and Robert Hathcock (Deputy Hathcock) with the Ozark County Sherriff's Office arrived at Nolan's Point shortly after Defendant stabbed Victim. The deputies rode with Carter and Dean in a boat to arrest Defendant. After finding Defendant on the shore, Deputy Collins arrested Defendant and read his *Miranda* rights to him. The deputies then transported Defendant to Nolan's Point, with Carter and Dean still in the boat. Defendant was placed in an officer's vehicle at Nolan's Point. After officials determined the incident occurred in Taney County, a Taney County deputy, Bobby Sanderson (Deputy Sanderson), transported Defendant to jail in Taney County. Later, Trooper Ryan Zeller (Trooper Zeller) took a cheek swab from Defendant pursuant to a search warrant.

▮▮▮ During voir dire, defense counsel asked jurors: "What if the police never asked him his side of the story at any time?" That question was followed by multiple responses that venirepersons might be skeptical of the police. That theme was pursued in Defendant's opening statement when defense counsel stated:

[Defendant] is placed in the front seat of I believe Robert Hathcock's patrol vehicle and that is where he sat for the next two hours handcuffed, cold and shivering just sitting. Nobody came to him asked him what happened, nobody came to him [to] ask for his side and said what's going [on] here.

The State subsequently elicited evidence from Carter, the law enforcement officers and Defendant relating to his interactions

with law enforcement officers and Defendant's opportunities to tell his side of the story to the officers. We next set forth the specific testimony or argument Defendant challenges under each corresponding point relied on.

Point 5:

Carter testified that Defendant did not say anything and no one told Defendant not to say anything during the boat ride back to Nolan's Point with Carter, Dean, Deputy Collins and Deputy Hathcock.

Point 6:

Trooper Zeller testified that he collected a cheek swab from Defendant pursuant to a search warrant. Defendant did not say anything to Trooper Zeller, and Trooper Zeller did not tell Defendant not to say anything.

Point 7:

Deputy Collins testified that Defendant did not say anything to him, and Deputy Collins did not tell Defendant not to say anything.

Point 8:

Deputy Sanderson testified that Defendant was quiet and did not say anything to him while being transported to jail in Taney County. Deputy Sanderson took pictures of Defendant's injuries once at the jail. Defendant did not speak during that time either, and Deputy Sanderson did not tell Defendant not to speak.

Point 9:

The State elicited testimony from Defendant during cross-examination concerning his opportunities to speak with officers before and after his arrival at the Taney County jail and to give a recorded statement if he wished.[6]

Point 10:

The State's closing argument discussed each piece of testimony challenged in Points 5-9 in an attempt to show that Defendant had multiple opportunities to make a statement to law enforcement prior to trial, but had chosen not to.

No timely objection was raised to any of the aforementioned testimony or argument, so our review is for plain error only.[7] Plain error review is a two-step process. *Dean*, 382 S.W.3d at 224. "First, we determine whether the trial court committed evident, obvious and clear error affecting the defendant's substantial rights." *Id.* If this first step is not satisfied, our inquiry should end. *Id.* "If we determine that a plain error occurred, however, we then must decide whether the error actually

**6.** During his direct examination, Defendant testified that Victim was using drugs and had attacked him first. Defendant claimed he was forced to repeatedly stab Victim in self-defense. Defendant also testified that: (1) he sat in custody at Nolan's Point for roughly two hours, but no one came to talk to him; (2) no officers came and asked him any questions at the Taney County jail; and (3) the trooper who came to get his cheek swab did not ask him any questions. When defense counsel asked Defendant why he had not told his story of self-defense to police prior to trial, Defendant responded, "Well, from the get-go nobody seemed like they wanted anything to do with me like I was automatically guilty to start with from the very first of it. You know, they treated me like dirt and I just assumed if it started that way that was the way it was going to end."

**7.** Defendant concedes that Points 6 and 8-10 are not preserved because no timely objection was made at trial. Defendant argues, however, that Points 5 and 7 are preserved. Regarding Point 5, defense counsel's objection came only after each of the three challenged questions were asked and answered. "In such cases, where an objection is made after the testimony has already been given, the objection comes too late." *State v. Delgado*, 774 S.W.2d 549, 551 (Mo. App. 1989). Similarly, Defendant did not object to the challenged testimony under Point 7 until after the challenged questions were asked and answered. Even then, no objection was raised on the ground now advanced on appeal.

resulted in manifest injustice or a miscarriage of justice." *Id.*

After reviewing the record, we agree with the State that Defendant opened the door to the challenged evidence and argument. Defendant's opening statement implied he had no opportunity to explain his side of the altercation to law enforcement. Defendant further implied that, in contrast, Victim had an opportunity to speak with police on multiple occasions and that was why Defendant had been charged with assault, rather than Victim. The State was entitled to rebut this theory by explaining that, after Defendant was arrested, he had multiple opportunities to provide his side of the story to law enforcement. Defendant's post-*Miranda* silence was not used to impeach his trial testimony or prove his guilt of the offenses charged. Instead, it was used to contradict Defendant's opening-statement theory that: (1) Defendant was only charged with assault because he had no opportunity to tell his side of the story after being arrested and read his *Miranda* rights; and (2) Victim did have that chance, which is the reason Defendant was charged instead of Victim. Accordingly, there was no *Doyle* violation in this case. *See State v. White*, 941 S.W.2d 575, 580-81 (Mo. App. 1997) (holding evidence of a defendant's post-arrest silence was admissible to rebut the defendant's claim that she was denied an opportunity to tell police her alibi defense when the police left the room following an obscene outburst from defendant); *State v. Henderson*, 724 S.W.2d 659, 661 (Mo. App. 1986) (State's closing argument that the defendant would not speak with police when asked was not

an improper reference to post-arrest silence, but a comment on the inconsistencies between the evidence and the defendant's opening statement that indicated "he would show he was never given a chance to tell his side of the story to the police").[8]

We find no merit in Defendant's argument that the State actually broached the topic of Defendant's silence during its opening statement, and Defendant's opening statement simply rebutted the State's reference (*i.e.*, the State opened the door to evidence of post-*Miranda* silence, not Defendant). Defendant relies on the following portion of the State's opening statement:

> Ladies and Gentlemen, I expect that you are going to hear evidence that throughout this entire thing [Defendant] didn't say a word. I expect that the evidence is going to be that when he took up walking off the bank after he stabbed [Victim] you are going to hear about how he only asked Jerry Maggard and his brother-in-law for a ride. That's it. You are not going to hear any evidence that he asked for help, that he ask[ed] them to call 911, none of that. He only asked for a ride to get out of there.

Maggard later testified he was fishing when he heard a noise and looked up from his fishing pole to see Victim and Defendant fighting. Maggard stated the man in the front of the boat (identified by Maggard as Defendant) had moved to the back of the boat and was on top of the man in the back of the boat (Victim). After Victim kicked Defendant out of the boat and

8. Defendant implies that, although the question of whether the door was opened to this evidence was discussed at trial, it is not admissible under that theory because the court never explicitly stated it was relying on the theory. There are two problems with this argument: (1) no timely objection was made to

the challenged testimony, thus depriving the court of an opportunity to make such an explicit ruling; and (2) this Court will uphold the trial court's admission of evidence if it is sustainable on any theory. *State v. Merrill*, 990 S.W.2d 166, 170 (Mo. App. 1999).

started it, Victim yelled out for Maggard to "call 911, he cut my throat." Maggard testified that Defendant swam to shore and asked him for a ride. Maggard refused, and Defendant did not say anything else to him.

 Defendant's argument is misdirected. The State's opening statement did refer to Defendant's silence, but that reference was to a specific time period prior to Defendant being arrested or receiving a *Miranda* warning. "[T]he Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest ... or after arrest if no *Miranda* warnings are given[.]" *Brecht v. Abrahamson*, 507 U.S. 619, 628, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The reason for this rule is that pre-*Miranda* silence "does not rest on any implied assurance by law enforcement authorities that it will carry no penalty." *Id*. This Court has previously recognized that pre-*Miranda* silence may provide probative impeachment evidence where the defendant advances a claim of self-defense. *State v. Cornelious*, 258 S.W.3d 461, 466 (Mo. App. 2008). In such cases, there is a general expectation that the defendant would have provided that explanation prior to trial if it were true. *Id*.

That is the case here. Maggard watched two men struggle in a fishing boat. One of them yelled out for help and asked him to call 911; the other swam to shore, and asked for nothing but assistance in leaving the crime scene. The State properly used Defendant's pre-*Miranda* silence to discredit Defendant's claim of self-defense and did not refer to Defendant's post-*Miranda* silence until after Defendant had presented an opening-statement theory that Defendant had remained silent after arrest because he had no opportunity to speak with law enforcement. We find no facial plain error in this case (*i.e.*, an evident, obvious and clear error). "Absent a finding of facial plain error, this Court should decline its discretion to review the claim." *State v. Amerson*, 259 S.W.3d 91, 94 (Mo. App. 2008). Points 5 through 10 are denied.

The trial court's judgment is affirmed.

DON E. BURRELL, J.—CONCUR

MARY W. SHEFFIELD, C.J.—CONCUR

