IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
IN THE INTEREST OF: T.R.T., )
 )
 Appellant, )
 )
v. ) WD84167
 )
JUVENILE OFFICER, ) Opinion filed: December 14, 2021
 )
 Respondent. )

 APPEAL FROM THE JACKSON COUNTY CIRCUIT COURT
 THE HONORABLE JALILAH OTTO, JUDGE

 Division One: W. Douglas Thomson, Presiding Judge,
 Alok Ahuja, Judge and Karen King Mitchell, Judge

 T.R.T. (“Juvenile”) appeals from the trial court’s judgment adopting the

Jackson County Family Court commissioner’s finding and recommendation that

Juvenile committed what would have been, if he were an adult, the felony of statutory

sodomy in the first degree, in violation of Section 566.062.1 Juvenile was placed on

probation under the supervision of the Family Court. In his three points on appeal,

Juvenile challenges the sufficiency of the evidence and argues the trial court abused

its discretion in admitting hearsay statements. We affirm.

 1All statutory references are to RSMo. (2016), as updated by supplement, unless otherwise

indicated.
 Factual and Procedural History

 Juvenile, age thirteen at the time of the offense, was in the bathroom helping

his three-year-old cousin, J.B. (“Victim”), after Victim used the restroom. During this

time, Juvenile’s adoptive mother (“Mother”)2 heard a sharp cry from Victim in the

bathroom. Seconds later, Victim ran out of the bathroom to Mother and gave her a

hug. Mother told him to put his pants on and Victim left the room.

 Moments later, Victim returned clothed, but now with a heavily soiled diaper.

When Mother took Victim to the bedroom to change him, Victim told her, “[Juvenile]

hurt my booty.” Mother noticed that Victim’s anus and surrounding skin appeared

swollen and red and that Victim appeared to be in pain. Juvenile was standing in

the bedroom doorway at the time and heard Victim’s statement that Juvenile hurt

him. Mother asked Victim how Juvenile hurt him, to which Juvenile interjected,

stating that he spanked Victim because “he wouldn’t be still for me to put his diaper

on.” Victim stated immediately thereafter, “[Juvenile] put two fingers in my booty.”

In response, Juvenile said his finger accidentally got caught when he was pulling up

Victim’s diaper. Upon further conversation with Juvenile, Juvenile told Mother

“[s]omething bad is in me. Something bad is in me.” Juvenile stated further that

“[s]omething dark in me made me do it.” Mother called the police.

 When Independence Police Officer Josko Wrabec (“Officer Wrabec”) arrived,

Mother told Juvenile to “tell the police officer what you did.” Juvenile responded

stating, “I did it,” but would not say what it was that he did. Mother then explained

 2 Mother began fostering Juvenile in 2018 and adopted him approximately four months prior

to this incident.

 2
to Officer Wrabec that Juvenile touched Victim. Juvenile repeatedly stated to Officer

Wrabec, “I did it” and that he was sorry. Juvenile requested to be removed from

Mother’s residence and said he wanted to go “home.” Officer Wrabec separated

Juvenile from Mother and asked Juvenile, “[w]hat’s going on? Why are you upset?”

Juvenile responded, “I did what she’s saying I did, and I’m sorry.” Juvenile was

transported to police headquarters. Upon arrival, Juvenile and Mother were placed

in a room together. There, Mother asked Juvenile, “[y]ou hurt him . . . [w]hy?”

Juvenile stated that he stopped when Victim cried.

 A petition was filed by the juvenile officer charging Juvenile with having

deviate sexual intercourse with Victim, a minor less than age 12,3 by inserting his

fingers into Victim’s anus.4 The petition alleged Juvenile’s conduct if committed by

an adult would warrant a charge of felony statutory sodomy in the first degree in

violation of Section 566.062.

 An adjudication hearing was held on July 31, 2020, during which the Family

Court received evidence in the form of testimony from Mother and Officer Wrabec.

Thereafter, the court entered an order finding the evidence proves the allegations of

the petition beyond a reasonable doubt and set the matter for a disposition hearing.

 3 Section 566.062 provides that "[a] person commits the offense of statutory sodomy in the first

degree if he or she has deviate sexual intercourse with another person who is less than fourteen years
of age." (emphasis added). Nevertheless, here, juvenile officer alleged in its petition that Juvenile "had
deviate sexual intercourse with . . . [Victim], who is less than twelve years old, . . . in violation of Section
566.062 RSMo." Although this inconsistency was not raised by either party, it had no effect on the
action as Victim in this case was just three years old.
 4A first amended petition was later filed adding a second count alleging Juvenile was at risk

of neglect as Mother was not allowing him to return home. Accordingly, Juvenile was placed in a
kinship placement and this count was voluntarily dismissed by the Juvenile Officer, as noted in the
court’s judgment.

 3
On October 26, 2020, the Family Court commissioner issued findings and

recommendations placing Juvenile on probation under the supervision of the Family

Court. The Family Court commissioner’s findings and recommendations were

adopted as the circuit court’s final judgment on November 3, 2020.

 Juvenile appeals.

 Standard of Review

 “Juvenile proceedings are reviewed ‘in the same manner as other court-tried

cases.’” In the Interest of D.C.M., 578 S.W.3d 776, 786 (Mo. banc 2019) (quoting

C.G.M., II v. Juvenile Officer, 258 S.W.3d 879, 882 (Mo. App. W.D. 2008)). “This Court

will affirm a judgment in a juvenile proceeding unless it is not supported by evidence,

is against the weight of evidence, or erroneously declares or applies the law.” Id.

(citing In re A.S.W., 226 S.W.3d 151, 153 (Mo. banc 2007)); see also Murphy v. Carron,

536 S.W.2d 30, 32 (Mo. banc 1976). “The credibility of the witnesses and the weight

their testimony should be given is a matter to be determined at the hearing by the

circuit court, ‘which is free to believe none, part, or all of their testimony.” Id. (quoting

C.L.B. v. Juvenile Officer, 22 S.W.3d 233, 236 (Mo. App. W.D. 2000)).

 “For a sufficiency of the evidence challenge, ‘[t]he evidence, including all

reasonable inferences therefrom, is considered in the light most favorable to the

judgment, disregarding all contrary inferences.’” Id. (quoting State v. Pike, 162

S.W.3d 464, 473-74 (Mo. banc 2005)). “When a juvenile is alleged to have committed

an act that would be a criminal offense if committed by an adult, the standard of

proof, like that in criminal trials, is beyond a reasonable doubt.” Id. (citing C.L.B. v.

 4
Juvenile Officer, 22 S.W.3d at 239). “Consequently, we must determine ‘whether

there is sufficient evidence from which the fact finder could have found the defendant

guilty beyond a reasonable doubt.” I.D. v. Juvenile Officer, 611 S.W.3d 869, 873 (Mo.

App. W.D. 2020) (quoting J.N.C.B. v. Juvenile Officer, 403 S.W.3d 120, 124 (Mo. App.

W.D. 2013)).

 “A trial court’s decision to admit hearsay evidence is reviewed for an abuse of

discretion.” State v. Gott, 523 S.W.3d 572, 576 (Mo. App. S.D. 2017) (citing State v.

Hosier, 454 S.W.3d 883, 896 (Mo. banc 2015)). An abuse of discretion occurs when

the court’s decision “is clearly against the logic of the circumstances and is so

unreasonable as to indicate a lack of careful consideration.” Id. (quoting State v.

Gonzales, 153 S.W.3d 311, 312 (Mo. banc 2005)). “We will not reverse for an error in

the admission of evidence unless ‘there is a reasonable probability that the error

affected the outcome of the trial.’” Id. (citation omitted).

 Analysis

 Juvenile raises three points on appeal. In his first point, Juvenile argues that

that the Family Court erred in finding him guilty because there was insufficient

evidence to prove beyond a reasonable doubt that he committed a “sexual act” by

inserting his finger in Victim’s anus. In his second point, Juvenile contends that the

court erred in finding him guilty because there was insufficient evidence to prove

beyond a reasonable doubt that he inserted his finger in Victim’s anus “for the

purpose of arousing or gratifying the sexual desire of any person or for the purpose of

terrorizing the victim.” In his third point, Juvenile argues that the court abused its

 5
discretion in admitting Victim’s hearsay statements that “[Juvenile] hurt my booty”

and “[Juvenile] put two fingers in my booty” under the excited utterance exception to

the hearsay rule. For the sake of clarity and the ease of analysis, we have chosen to

address Juvenile’s third point first. Additionally, because Juvenile’s first two points

focus on the sufficiency of the evidence, we address these points together.

Point III

 In his third point on appeal, Juvenile claims that the court abused its

discretion in admitting Mother’s testimony that Victim told her after the incident

that “[Juvenile] put two fingers in my booty” and “hurt my booty.” Specifically,

Juvenile asserts that Victim’s statements to Mother did not fall within the excited

utterance exception to the hearsay rule because: (1) Victim was “relatively calm” at

the time of disclosure; (2) Victim made the statements after the independent

intervening event of soiling his diaper; and (3) enough time had elapsed for the three-

year-old Victim to fabricate his statement to explain why he soiled his diaper. We

disagree.

 “A hearsay statement is any out-of-court statement that is used to prove the

truth of the matter asserted and that depends on the veracity of the statement for its

value.” State v. Kemp, 212 S.W.3d 135, 146 (Mo. banc 2007) (quoting State v. Forrest,

183 S.W.3d 218, 224 (Mo. banc 2006)). “Hearsay statements are, as a rule,

inadmissible.” State v. Gray, 347 S.W.3d 490, 500 (Mo. App. E.D. 2011) (citing State

v. Douglas, 131 S.W.3d 818, 823 (Mo. App. W.D. 2004)). “In order to be admissible, a

hearsay statement must fall under an exception to the general rule against hearsay

 6
evidence.” State v. Thomas, 272 S.W.3d 421, 428 (Mo. App. E.D. 2008) (citing State

v. Kemp, 212 S.W.3d at 146). “The excited utterance exception to the rule against

hearsay applies when: (1) a startling event or condition occurs; (2) the statement is

made while the declarant is still under the stress of the excitement caused by the

event and has not had an opportunity to fabricate the story; and (3) the statement

relates to the startling event.” State v. Gray, 347 S.W.3d at 500 (quoting State v.

Hedges, 193 S.W.3d 784, 788 (Mo. App. E.D. 2006)).

 Courts have determined that excited utterances are inherently
 trustworthy because the startling nature of the event is speaking
 through the person instead of the person speaking about the event.
 Because the statement is spontaneous and made under the influence of
 events, the statement is assumed trustworthy because it is unadorned
 by thoughtful reflection. Among the factors to be considered in
 determining whether an excited utterance exists are [1] the time
 between the startling event and the declaration, [2] whether the
 declaration is in response to a question, [3] whether the declaration is
 self-serving, and [4] the declarant’s physical and mental condition at the
 time of the declaration. While no one factor necessarily results in
 automatic exclusion, all should be considered in determining whether
 the declaration was the result of reflective thought.

State v. Kemp, 212 S.W.3d at 146 (quoting Bynote v. National Super Markets, Inc.,

891 S.W.2d 117, 122 (Mo. banc 1995)).

 Here, we preliminarily note that Victim’s two statements at issue are, absent

an applicable exception, inadmissible hearsay as each is an out-of-court statement

which were offered at trial to prove the truth of the matter asserted. Thus, in order

to have been properly admitted, each statement must have fallen within the excited

utterance exception or another recognized exception to the hearsay rule. Further,

because the evidence clearly supports, and Juvenile does not dispute, a finding that

 7
a startling event occurred and that Victim’s statements relate to that startling event,

we will apply the Kemp factors to determine whether Victim was still under the

excitement of the event at the time of his declarations. State v. Kemp, 212 S.W.3d at

146.

 We begin with Victim’s first statement to Mother that “[Juvenile] hurt my

booty.” Although the record does not reveal exactly how much time elapsed between

Victim’s scream and his subsequent statement, we can infer from the record that

Victim’s statement to Mother occurred shortly after the startling event. Mother’s

testimony indicates the event and Victim’s statement occurred within minutes of each

other. Victim’s statement was made spontaneously rather than in response to

questions. Victim’s statement was not self-serving as Victim, a three-year-old child,

was not attempting to get anything out of the situation other than help. See State v.

Gott, 523 S.W.3d at 578 (“A victim’s identification of the defendant as the perpetrator

of the crime is not self-serving.”).

 Finally, Victim’s mental and physical state at the time support the conclusion

that he was under the immediate and uncontrolled domination of his senses when he

made the statement. State v. Van Orman, 642 S.W.2d 636, 639 (Mo. 1982). After the

incident occurred, Victim screamed, ran to Mother for comfort, and ultimately soiled

his diaper. Mother observed “obvious swelling to the area” which caused Victim

“discomfort,” demonstrated by Victim’s unwillingness to allow Mother to wipe or

touch him. Despite Mother’s testimony, on which Juvenile heavily relies, that Victim

was “remarkably . . . calm . . . for the situation,” it is evident that Victim did not make

 8
his remark after reflective thought and gives us no reason to find such statement

lacking any indicia of trustworthiness. Accordingly, the trial court did not abuse its

discretion in admitting Victim’s statement to Mother that “[Juvenile] hurt my booty,”

pursuant to the excited utterance exception to the hearsay rule.

 We must next analyze Victim’s subsequent statement to Mother that

“[Juvenile] put two fingers in my booty.” Following Victim’s statement that

“[Juvenile] hurt my booty,” Juvenile stood in the doorway of the bedroom where

Mother was changing Victim. Mother asked Victim, “[h]urt you how?” to which

Juvenile interjected, stating that he “gave [Victim] a spanking because he wouldn’t

be still for me to put his diaper on.” Immediately thereafter, and without further

prompting, Victim stated to Mother, “[Juvenile] put two fingers in my booty.”

 Our analysis of this statement is similar to our analysis above. Though the

record is lacking as to specifically how much time elapsed between Victim’s scream

and his statement to Mother that “[Juvenile] put two fingers in my booty,” we can

infer that such statement occurred not long after the startling event. Further,

Juvenile was standing in the doorway where Victim was having his diaper changed,

and interjected himself into Mother’s conversation with Victim with a justification as

to what had occurred. Certainly, Victim was “under the immediate and uncontrolled

domination of his senses.” See State v. Van Orman, 642 S.W.2d at 639.

 Further, though Victim’s statement was made in response to Mother’s follow-

up question, “[h]urt you how?” it was also rebutting Juvenile’s assertion that he had

simply spanked Victim. Victim’s statement was made as his Mother cleaned his

 9
tender and swollen anus area while his tormenter looked on and made yet another

excuse for his actions. Under these circumstances, the Victim’s age, three years old,

is also a consideration with respect to the influence of his emotions, the excitement of

his statements, and his lack of deliberation in making the statements. It is without

doubt that at that moment and under such circumstances, Victim was under the

immediate and uncontrolled domination of his senses.

 Importantly, “[t]he essential test for admissibility of a spontaneous statement

or excited utterance is neither the time nor place of its utterance but whether it was

made under such circumstances as to indicate it is trustworthy.” State v. Kemp, 212

S.W.3d at 146. For the reasons stated above, we find nothing in the record that

indicates a lack of trustworthiness related to Victim’s second statement to Mother.

We further note that nothing about Victim’s statement is self-serving. In addition,

we note that “where there have been sexual assaults of young children the courts

have recognized the necessity of the application of the exception of spontaneous

exclamations [or excited utterances].” State v. Van Orman, 642 S.W.2d at 639.

 Accordingly, the trial court did not abuse its discretion in admitting both of

Victim’s statements to Mother pursuant to the excited utterance exception to the

hearsay rule.

 Point III is denied.

Points I and II

 In his first and second points, Juvenile challenges the sufficiency of the

evidence to support the court’s finding him guilty beyond a reasonable doubt of what

 10
would be, if he were tried as an adult, the offense of first-degree statutory sodomy.

In his first point, Juvenile argues there was insufficient evidence to prove beyond a

reasonable doubt that he engaged in a “sexual act” by inserting his fingers into

Victim’s anus. Similarly, in his second point, Juvenile argues there was insufficient

evidence to prove beyond a reasonable doubt that he inserted his fingers into Victim’s

anus “for the purpose of arousing or gratifying the sexual desire of any person or for

the purpose of terrorizing the victim.” Fundamentally, both points challenge the

sufficiency of the evidence as it relates to Juvenile’s intent. Accordingly, the same

evidence defeats both points.

 “A person commits the offense of statutory sodomy in the first degree if he or

she has deviate sexual intercourse with another person who is less than fourteen

years of age.” Section 566.062. Deviate sexual intercourse is defined, in pertinent

part, as:

 [A] sexual act involving the penetration, however slight, of the penis,
 female genitalia, or the anus by a finger, instrument or object done for
 the purpose of arousing or gratifying the sexual desire of any person or
 for the purpose of terrorizing the victim[.]

Section 566.010(3) (emphasis added). “In assessing whether a defendant touched

another ‘for the purpose of arousing or gratifying the sexual desire of any person,’ a

[trier of fact] may infer intent from the surrounding circumstances or from ‘the sexual

nature of the act itself.’” State v. Holmes, 626 S.W.3d 339, 342 (Mo. App. E.D. 2021)

(quoting State v. Ganzorig, 533 S.W.3d 824, 830 (Mo. App. E.D. 2017)). “Because

direct evidence of a defendant’s intent is rarely available, the State most often proves

intent through circumstantial evidence.” Id. “The purpose of requiring proof of

 11
defendant’s intent is to ‘exclude innocent contacts from being deemed criminal

conduct.’” Id. (quoting State v. Gaines, 316 S.W.3d 440, 456 (Mo. App. W.D. 2010)).

“The defendant’s mental state may be determined from evidence of the defendant’s

conduct before the act, from the act itself, and from the defendant’s subsequent

conduct.” State v. Davidson, 521 S.W.3d 637, 644 (Mo. App. W.D. 2017) (quoting State

v. Holleran, 197 S.W.3d 603, 611 (Mo. App. E.D. 2006)).

 Here, there was substantial evidence presented at trial that Juvenile was

aware that by inserting his fingers into Victim’s anus he was engaging in a sexual act

and that he was doing so for the purpose of arousing or gratifying a sexual desire.

The evidence reflected that Juvenile was interested in sex at a young age. Mother

testified that, throughout the two-year period that Juvenile lived with her, “[Juvenile]

would steal devices so that he could watch pornography.” When Mother took

Juvenile’s electronic devices, “he would either take them back or he would take them

from family members’ or friends’ homes and bring more into the house. Every time I

would find it with . . . a ton of pornography.” Mother also testified that on at least

two occasions, Juvenile came out of his room with an erection.

 Furthermore, Juvenile made several statements indicating his awareness of

his conduct. After Victim told Mother that Juvenile had “hurt [his] booty” and “put

two fingers in [his] booty,” Mother asked Juvenile, “[w]hy did you do it?” After first

uttering multiple excuses, Juvenile told Mother, “[s]omething bad is in me.

Something dark in me made me do it.” Moreover, when Officer Wrabec arrived,

Mother told Juvenile to tell the police what he did. In response, Juvenile repeatedly

 12
stated, “I did it,” without explaining what it was that he did. Mother then told Officer

Wrabec what Victim had told her, to which Juvenile stated, “I did it. I just want to go

home.” In order to speak with Mother outside the presence of Juvenile, Officer

Wrabec escorted Juvenile outside. When Juvenile appeared scared and upset, Officer

Wrabec asked him, “[w]hat’s going on? Why are you upset?” Juvenile told Officer

Wrabec, “I did what she’s saying I did and I’m sorry.” Finally, at the police station,

Mother asked Juvenile “[y]ou hurt him . . . [w]hy?” Juvenile responded that he

stopped when Victim cried.

 In light of the substantial evidence presented at trial of Juvenile’s prior

conduct and his statements about this incident, we find that a reasonable fact finder

could have found beyond a reasonable doubt that Juvenile engaged in a “sexual act”

by inserting his finger into Victim’s anus “for the purpose of arousing or gratifying

[his] sexual desire.”

 Juvenile incorrectly relies on In re J.A.H., 293 S.W.3d 116, 122 (Mo. App. E.D.

2009), to assert the court improperly inferred his intent from the act of touching

alone. In J.A.H., the Eastern District held that acting for the purpose of sexual

arousal or gratification could not be inferred from the act alone when an eight or nine-

year-old boy touched the genitals of and placed his penis in the mouth of his five or

six-year-old cousin. Id. at 121. In so finding, the court noted that “there was no

evidence regarding the Juvenile’s behavioral development or knowledge of sexual

subject matter.” Id. The court concluded stating that “[w]ithout such evidence or

more detailed information regarding the circumstances of the touchings, we are

 13
unwilling to find that an eight or nine year old touches his penis to the mouth of a

five or six year old for no discernable reason other than sexual arousal or

gratification.” Id.

 Here, unlike J.A.H., not only was Juvenile thirteen years old as opposed to

being pre-pubescent, but significant evidence was presented at trial regarding

Juvenile’s behavioral development and knowledge of sexual subject matter. As stated

above, Mother testified that, throughout the two-year period that Juvenile lived with

her, “[Juvenile] would steal devices so that he could watch pornography.” When

Mother took Juvenile’s electronic devices, “he would either take them back or he

would take them from family members’ or friends’ homes and bring more into the

house. Every time I would find it with . . . a ton of pornography.” Mother also testified

that on at least two occasions, Juvenile came out of his room with an erection. Thus,

here, there was evidence indicating Juvenile’s general knowledge of sexual subject

matter and his behavioral development from his viewing of pornography, and literally

stealing electronic devices from others so that he could do so. See id. Based on this

evidence, in concert with Juvenile’s acknowledgement that he had done something

wrong, a fact finder could permissibly infer from these acts and surrounding

circumstances Juvenile touched Victim for the purpose of arousing or gratifying his

sexual desire. Section 566.010(3).

 Accordingly, there was sufficient evidence at trial from which a reasonable

finder of fact could have found beyond a reasonable doubt that Juvenile engaged in a

“sexual act” by inserting his finger into Victim’s anus and that Juvenile acted with

 14
“the purpose to arouse or gratify [his] sexual desire.” The court did not err in finding

Juvenile guilty of what would have been, had he been an adult, first-degree statutory

sodomy.

 Points I and II are denied.

 Conclusion

 The trial court’s judgment is affirmed.

 __________________________________________
 W. DOUGLAS THOMSON, JUDGE
All concur.

 15